William A. **BELTZER** and Sharon Beltzer,
Plaintiffs and Appellants,

v.

**UNITED STATES** of America,
Defendant and Appellee.

No. 73–1539.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1973.

Decided April 19, 1974.

Robert V. Dwyer, Jr., Omaha, Neb.,
for appellant.

Arthur L. Bailey, Atty., Tax Div.,
Dept. of Justice, Washington, D. C., for
appellee.

Before VAN OOSTERHOUT and
MOORE,* Senior Circuit Judges, and
WEBSTER, Circuit Judge.

MOORE, Circuit Judge.

Plaintiffs-appellants, William A.
Beltzer and Sharon Beltzer, husband and
wife, brought suit against the United
States of America (hereafter the "Government") to obtain a refund of income
taxes allegedly improperly assessed
against them for the calendar years 1966
and 1967.[1] After pre-trial proceedings
(interrogatories and admissions), the
Government moved for summary judgment in its favor which was granted.
From the judgment that "Plaintiffs take
nothing" they appeal.

The facts material to the decision are
as follows:

Taxpayer, together with his brother
and sister, were co-executors of the Estate of Oren A. Beltzer, their father.
At the time of their father's death (September 22, 1959), there were shares of
stock of Grand Island Trust Company
and Grand Island Safe Deposit Company
in the Estate. For estate tax purposes
the value of these closely held corporate
shares had to be ascertained. The executors valued the stock of Grand Island
Trust Company in their estate tax return at $147,515 and the stock of Grand
Island Safe Deposit Company at $15,840.

Taxpayer's inherited portion of these
stocks, so valued, was $50,981.73 for the
Trust Company and $8,731.68 (after audit adjustments) for the Safe Deposit
Company, a total of $59,713.41. On May
6, 1966, taxpayer sold these shares for
$140,000, thus incurring a substantial
capital gain of somewhat over $80,000.

---

*LEONARD P. MOORE, Senior Circuit
Judge of the United States Court of Appeals
for the Second Circuit, sitting by designation.

1. William A. Beltzer, as the inheritor of the
stock, the value of which is in question, will
be referred to as the "taxpayer", although
in some instances the word collectively includes Mrs. Beltzer, also, as an appellant.

By that time the executors had paid the estate tax on the stock values so reported and adjusted. The time for further adjustments and assessments against the Estate expired by virtue of the statute of limitations on December 23, 1963.

In an affidavit dated February 20, 1973, taxpayer claims that his older brother, co-executor James, handled the estate tax return and that he relied upon him. This reliance might well have been justified because if the figures which taxpayer now advances had been used, the value of the Estate would have been increased by some $175,000 and the tax for which the heirs would have been liable increased by some $58,000.

Taxpayer concedes that in 1966 when he was thinking of selling his stock he became aware of the valuation situation and requested a Certified Public Accountant to present his thoughts as to what a proper value of the stocks should have been. Under date of May 27, 1967, the Accountant expressed the view that the stock as of September 22, 1959, (date of death) was "undervalued." He gave the taxpayer a rather wide range of choices as to value and summarized these by saying "the estimated market value of the Grand Island Trust Co. ranges from $82.90 per share to $454.67 per share." This range is attributable to the various accounting principles which the Accountant applied to the Trust Company's financial statements.

Taxpayer asserts (Br. p. 3) that he "before selling the stock in 1966, sought the advice of a certified public accountant with regard to the fair market value of the stock in 1966." The Accountant responded on May 27, 1967, as aforesaid, "Recently, you requested me to review the value of the [stocks in issue]." From the Accountant's somewhat wide range of values, taxpayer chose a figure which, by his claim of May 30, 1972, would have enhanced (in his now considered judgment) his share of those stocks which he received from his father's estate from $59,713.41 to

$118,019.64, despite the fact that, except for his unwitting reliance, he had signed the estate tax return at the lesser figure and received the benefit of the lesser estate tax. For capital gains purposes taxpayer would benefit greatly by having a base of $118,019.64 instead of $59,713.41.

Quite naturally, on this state of facts, the Government has invoked the doctrines of "quasi-estoppel" and "duty of consistency." This doctrine, as suggested by Stearns v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647 (1934), and formally expounded in Alamo National Bank v. Commissioner, 95 F.2d 622 (5th Cir.), cert. denied, 304 U.S. 577, 58 S.Ct. 1047, 82 L.Ed. 1541 (1938), was summarized in the case of McMillan v. United States, 64-2 U.S.T.C. ¶ 9720 (S.D.W.Va.1964), see also, Griffith v. United States, 71-1 U.S.T.C. ¶ 9280 (N. D.Tex., 1971), as placing a taxpayer under a duty of consistency when:

(1) the taxpayer has made a representation or reported an item for tax purposes in one year,

(2) the Commissioner has acquiesced in or relied on that fact for that year, and

(3) the taxpayer desires to change the representation, previously made, in a later year after the statute of limitations on assessments bars adjustments for the initial tax year.

Taxpayer attacks *McMillan* and *Griffith* as being unwarranted extensions of the upper court cases. We do not agree. A taxpayer in this situation, innocent or otherwise, who has already had the advantage of a past alleged misstatement —such advantage now beyond recoupment—may not change his posture and, by claiming he should have properly paid more tax before, avoid the present levy. As the Fifth Circuit stated in *Alamo, supra*:

In adjusting values the Commissioner in effect represents the interest of all other taxpayers who must bear what the particular taxpayer unjustly escapes. It is no more right to allow a

party to blow hot and cold as suits his interest in tax matters than in other relationships whether it be called estoppel, or a duty of consistency, or the fixing of a fact by agreement, the fact fixed for one year ought to remain fixed in all its consequences, unless a more just general settlement is proposed and can be effected.

95 F.2d at 623.

Nor do the cases cited by taxpayer support a contrary conclusion. Northport Shores, Inc. v. Commissioner, 31 B.T.A. 1013 (1935), and Rodgers v. Commissioner, 31 B.T.A. 994 (1935), dealt with issues of estoppel not quasi-estoppel and indeed those cases arose before the latter doctrine had been clearly established. Quasi-estoppel is now accepted by the Tax Court. Mayfair Minerals, Inc. v. Commissioner, 56 T.C. 82 (1971), aff'd, 456 F.2d 622 (5th Cir. 1972). Ford v. United States, 276 F.2d 17, 149 Ct.Cl. 558 (1947), involved taxpayers who were minors at the time the representation was made to the Government. Since they did not legally participate in the transaction, they were not held to be bound. Crosley Corp. v. United States, 229 F.2d 376 (6th Cir. 1956), involved a mistake of law, not a misrepresentation of fact and thus the doctrine of quasi-estoppel was found inapplicable. Lofquist Realty Co. v. Commissioner, 102 F.2d 945 (7th Cir. 1939), was decided in favor of the Commissioner, and therefore that court's discussion of what facts were within the taxpayer's knowledge does not lend support to the assertion that actual knowledge is a prerequisite for quasi-estoppel.

The Pennsylvania Company for Banking & Trusts v. United States, 51–2 U.S.T.C. ¶ 9392 (E.D.Pa.1951), involved the issue of the taxability of a particular exchange made in 1930. The determination that it was not taxable was made in an audit by a revenue agent in 1932 after a total disclosure of the relevant facts and therefore taxpayer did not list the exchange on his return. Thereafter taxpayer's trustee was held not to be estopped from asserting that the exchange was in fact taxable and that the basis for the calculation of capital gain was the value of the property in 1930. The court noted:

> If, in the present case, the facts relating to the exchange, which the grantor had deemed nontaxable and had not reported, had not been in the possession of the Commissioner before the grantor's income tax liability for 1930 had been "walled up" by the Statute of Limitations * * * [t]he Court would then have to give effect to the doctrine, akin to that of estoppel, which holds a taxpayer to a position taken by him in some earlier return or proceeding, which inured to his benefit taxwise, and precludes him from later on asserting an inconsistent, though legally correct, position.

51–2 U.S.T.C. at 16, 976.

The arguments raised by taxpayer having been considered and rejected, the decision of the court below is affirmed.