**ESTATE OF Hilda ASHMAN,**
**Appellant,**

v.

**COMMISSIONER OF INTERNAL**
**REVENUE, Appellee.**

No. 99–70280.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 3, 2000

Filed Oct. 26, 2000

Steven R. Mather, Kajan Mather and Barish, Beverly Hills, California, for the appellant.

Carol Barthel, Tax Division Department of Justice, Washington, D.C., for the appellee.

Before: O'SCANNLAIN, FERNANDEZ, and RAWLINSON, Circuit Judges.

FERNANDEZ, Circuit Judge:

The Estate of Hilda Ashman[1] appeals the tax court's decision that the Commissioner of Internal Revenue properly held Ashman to the duty of consistency and, therefore, properly assessed a deficiency for Ashman's 1993 tax year. We affirm.

## BACKGROUND

On or before December 19, 1990, Ashman received a distribution of $725,502 from a qualified defined benefit pension plan. See 26 U.S.C. § 401. In order to avoid income taxation of the distributed

---

1. Hilda Ashman filed an income tax return for 1990 and an income tax return for 1993. This litigation arises out of those filings. She is since deceased, and her estate is maintaining this action. For convenience, we will simply refer to her and it as Ashman.

amount, she was required to roll it over into another qualified plan or account within 60 days. *See* 26 U.S.C. § 402(c)(3). She did manage to do that with the bulk of the money, but she missed the deadline as to $100,502.21. Nonetheless, in her 1990 income tax return she reported that the full $725,502 had been rolled over from her former plan to Merrill Lynch, as a result of which none of it was taxable.

Ashman did not explain that she had, in fact, missed a deadline as to a portion of the amount. She did not tell the Internal Revenue Service that it was not until February 27, 1991, that she opened an account with Great Northern Insured Annuity Corporation (GNA) with a deposit of $101,-127.85, which represented the amount she had not timely rolled over, plus interest. The Commissioner did not review or challenge the roll over, and there matters stood for awhile.

However, in 1993 Ashman obtained two distributions from GNA in the total amount of $99,632. She did not report that as taxable income either. This time her failure to report was, at least in hindsight, on the theory that the amount had not been successfully rolled over for the 1990 tax year, so it was taxable then, but not now. By the time this all came to light, the statute of limitations had run on the 1990 tax return. That did not dissuade the Internal Revenue Service.

■ The Commissioner issued a deficiency notice on Ashman's 1993 income tax return and asserted that she did owe tax on that year's $99,632 distribution. Ashman then filed a petition with the tax court in which she sought to have that deficiency set aside, and the Commissioner, in due course, defended on the basis that Ashman was bound by the duty of consistency.

She could not, he said, now claim that the $100,502.21 had actually missed the deadline and was, therefore, taxable in her 1990 tax return, when she had previously taken the position that it was properly rolled over.[2]

The tax court accepted and applied the duty of consistency defense. Thus, it determined that Ashman was bound to her 1990 return representations, as a result of which she owed tax for the 1993 distribution. She appealed.

### JURISDICTION AND STANDARD OF REVIEW

The tax court had jurisdiction pursuant to 26 U.S.C. §§ 6213, 6214 & 7442; we have jurisdiction pursuant to 26 U.S.C. § 7482.

■ "We review decisions of the tax court on the same basis as decisions in civil bench trials in district court, with no special deference paid to the tax court's conclusions of law." *Ball, Ball & Brosamer, Inc. v. Commissioner*, 964 F.2d 890, 891 (9th Cir.1992) (citations omitted).

### DISCUSSION

Ashman attacks the Commissioner's defense on three fronts. First, she says that there is no viable duty of consistency doctrine. Next, she asserts that even if the doctrine exists the tax court cannot apply it. Finally, she says that even if the doctrine exists and is available to the tax court, it was wrongly applied here. As we will explain, because the attacks on the center and both flanks fail, the Commissioner's revetment stands.

**2.** Ashman complains that the tax court should not have allowed the Commissioner to amend his answer to assert that defense. We, however, are unable to say that the tax court abused its discretion when it allowed that amendment. *See* Tax Ct. R. 41(a); *LeFever v. Commissioner*, 100 F.3d 778, 784–85 n. 2

(10th Cir.1996) (Fed.R.Civ.P. 15(b) decisions are applicable to the Tax Ct. R. 41(a)); *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir.1996) (abuse of discretion standard); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987) (same).

## A. *The Doctrine*

Numerous cases have declared that there is a duty of consistency in the tax area. That is based on a fairly easily recognizable principle. In *R.H. Stearns Co. v. United States,* 291 U.S. 54, 61–62, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934), a taxpayer had signed a waiver of the period of assessment and collection of its taxes, and then asserted that the statute of limitations acted as a bar when the Commissioner finally acted. The Court responded:

The applicable principle is fundamental and unquestioned. "He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned, for the law says to him, in effect: 'This is your own act, and therefore you are not damnified.'" Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong.

*Id.* at 61–62, 54 S.Ct. at 328 (citations omitted).

That equitable thought lies behind the duty of consistency, which is not unlike the perhaps more familiar doctrine of judicial estoppel. In fact, in referring to the latter doctrine in a phrasing hauntingly similar to the "duty of consistency" we have stated that "[j]udicial estoppel [is] sometimes also known as the doctrine of preclusion of inconsistent positions." *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir.1996). We have further explained that judicial estoppel is a doctrine which "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Id.* It is a doctrine which is based upon policies that seek to foster "the orderly administration of justice and regard for the dignity of judicial proceedings," and to preclude parties from "playing fast and loose with the courts." *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990) (internal quotations and citations omitted). But it is not even necessary that the contrary positions be taken in court. An inconsistent position taken with an insurance carrier or an employer on the one hand and in a court on the other can result in judicial estoppel. *See Johnson v. Oregon,* 141 F.3d 1361, 1369 (9th Cir.1998); *see also Helfand v. Gerson,* 105 F.3d 530, 534–36 (9th Cir. 1997). Thus, it is not surprising that a number of courts have expressly upheld the use of the duty of consistency doctrine in tax cases.

As the Fifth Circuit Court of Appeals explained it over 50 years ago:

While it is true that income taxes are intended to be settled and paid annually each year standing to itself, and that omissions, mistakes and frauds are generally to be rectified as of the year they occurred, this and other courts have recognized that a taxpayer may not, after taking a position in one year to his advantage and after correction for that year is barred, shift to a contrary position touching the same fact or transaction. When such a fact or transaction is projected in its tax consequences into another year there is a duty of consistency on both the taxpayer and the Commissioner with regard to it, whether or not there be present all the technical elements of an estoppel.

*Orange Sec. Corp. v. Commissioner,* 131 F.2d 662, 663 (5th Cir.1942); *see also Herrington v. Commissioner,* 854 F.2d 755, 757 (5th Cir.1988); *Johnson v. Commissioner,* 162 F.2d 844, 846 (5th Cir.1947). Other courts of appeals have adopted the same position. *See LeFever,* 100 F.3d at 786–88; *Lewis v. Commissioner,* 18 F.3d 20, 26 (1st Cir.1994); *Kielmar v. Commissioner,* 884 F.2d 959, 965 (7th Cir.1989); *Shook v. United States,* 713 F.2d 662, 666–67 (11th Cir.1983); *Beltzer v. United States,* 495 F.2d 211, 212 (8th Cir.1974).

So has the tax court. *See, e.g., Estate of Letts v. Commissioner,* 109 T.C. 290, 296–97, 1997 WL 727721 (1997). We have not directly done so, although we have used language which is much the same.

In a case where a taxpayer had taken one position and thereby garnered tax benefits over an 18–year period, we held that it should not be able to change its position and thereby garner still another benefit. *See Building Syndicate Co. v. United States,* 292 F.2d 623, 626 (9th Cir. 1961). We cited *R.H. Stearns Co.,* 291 U.S. at 61–62, 54 S.Ct. at 328, and went on to emphasize that "'a person, with full knowledge of the facts, shall not be permitted to act in a manner inconsistent with his former position.'" *Id.* (citation omitted). We then quoted the following passage from *Alamo Nat'l Bank v. Commissioner,* 95 F.2d 622, 623 (5th Cir.1938), with approval:

> It is no more right to allow a party to blow hot and cold as suits his interests in tax matters than in other relationships. Whether it be called estoppel, or a duty of consistency, or the fixing of a fact by agreement, the fact fixed for one year ought to remain fixed in all its consequences, unless a more just general settlement is proposed and can be effected.

*Bldg. Syndicate,* 292 F.2d at 626; *see also Wentworth v. Commissioner,* 244 F.2d 874, 874–76 (9th Cir.1957).

That is not to say that no federal case has refused to apply the doctrine. Some 57 years ago, the Second Circuit indicated that it was dubious about holding taxpayers to something that they had asserted in a prior return without calculating the tax differences, but making those calculations would be inappropriate. *See Bennet v. Helvering,* 137 F.2d 537, 538–39 (2d Cir. 1943). With all due respect, holding taxpayers to the facts that they represented in a prior year seems more appropriate and does not require the making of nice calculations. On occasion, the tax court

has failed to apply the doctrine, but those occasions have been fact specific and the court did not reject it entirely. *See, e.g., Century Data Sys., Inc. v. Commissioner,* 86 T.C. 157, 168–71, 1986 WL 22082 (1986); *Kenosha Auto Transp. Corp. v. Commissioner,* 28 T.C. 421, 425, 1957 WL 1057 (1957). Finally, in a veriest dictum we expressed some discomfort with the general concept, although we did not reject the doctrine. *See Unvert v. Commissioner,* 656 F.2d 483, 486–87 n. 2 (9th Cir.1981).

■ When all is said and done, we are of the opinion that the duty of consistency not only reflects basic fairness, but also shows a proper regard for the administration of justice and the dignity of the law. The law should not be such a idiot[3] that it cannot prevent a taxpayer from changing the historical facts from year to year in order to escape a fair share of the burdens of maintaining our government. Our tax system depends upon self assessment and honesty, rather than upon hiding of the pea or forgetful tergiversation.

Of course, we are aware of the fact that the Supreme Court has not allowed equitable considerations to toll the statute of limitations. *See United States v. Brockamp,* 519 U.S. 347, 348, 117 S.Ct. 849, 850, 136 L.Ed.2d 818 (1997). The duty of consistency has nothing to do with tolling; it deals with the equitable insight that a person should be prevented from taking different positions about the same historical transactional facts in different years—for example, I deposited the funds in a timely fashion, versus I did not do so—and benefitting in each of those years. That does, however, lead to the further question of whether the tax court can have anything at all to do with equity.

**B. *Tax Court Application of the Doctrine***

■ Ashman's next attack is based on the Supreme Court's holding that the "Tax

---

**3.** Charles Dickens, Oliver Twist 439 (Pocket Library ed., Pocket Books, Inc. 1959) (1837).

Court is a court of limited jurisdiction and lacks general equitable powers." *Commissioner v. McCoy,* 484 U.S. 3, 7, 108 S.Ct. 217, 219, 98 L.Ed.2d 2 (1987). Nobody doubts either that proposition, or its specific application which prevented the setting aside of a penalty required by law on the general theory that fairness and justice would be fostered thereby. *See id.* at 5–6, 108 S.Ct. at 218. But that is far from saying that the tax court, and we as a reviewing court, must allow ourselves to be gulled by taxpayers who change the historical facts to suit the needs of the moment. Nor does it mean that no equitable concepts can operate within the boundaries of the tax court's limited jurisdiction. As the Seventh Circuit recently put it: "that the Tax Court lacks 'general equitable powers' means only that the tax court is not empowered to override statutory limits on its power by forgiving interest and penalties that Congress has imposed for nonpayment of taxes—but then no court is, unless the imposition would be unconstitutional." *Flight Attendants Against UAL Offset v. Commissioner,* 165 F.3d 572, 578 (7th Cir. 1999) (citation omitted).

We have said much the same thing. We have said that "while [the Tax Court] cannot act, equitably or otherwise, in a case over which it lacks or has lost jurisdiction, the Tax Court can act equitably in a case in which it has jurisdiction." *Kelley v. Commissioner,* 45 F.3d 348, 351 (9th Cir. 1995). Thus, "it does have a limited equitable power to act in a case that is properly before it." *Id.; see also Buchine v. Commissioner,* 20 F.3d 173, 177–78 (5th Cir.1994); *Bokum v. Commissioner,* 992 F.2d 1136, 1140 (11th Cir.1993); *Reynolds v. Commissioner,* 861 F.2d 469, 472 (6th Cir.1988); *cf. Harrah v. United States,* 77 F.3d 1122, 1125 (9th Cir.1995) (equitable recoupment doctrine is available in the tax area).

It is also notable that a number of the cases which have upheld the doctrine, or its equivalent, have been appeals from tax court decisions. *See, e.g., LeFever,* 100 F.3d at 782; *Kelley,* 45 F.3d at 349; *Lewis,* 18 F.3d at 21; *Kielmar,* 884 F.2d at 960; *Herrington,* 854 F.2d at 756.

In other words, to say that a doctrine is tinged with equity is not to utter an anathema which bans it from the environs of the tax court. Even if the tax court does not have far-reaching general equitable powers, it can apply equitable principles and exercise equitable powers within its own jurisdictional competence. In particular, it can apply the duty of consistency doctrine. All of that being said, we must still consider whether the doctrine should apply to this case.

### C. *Application of the Doctrine*

Ashman's weakest claim is that the doctrine should not apply to the facts of her case. The courts have stated that the duty of consistency has the following elements:

(1) A representation or report by the taxpayer; (2) on which the Commission[er] has relied; and (3) an attempt by the taxpayer after the statute of limitations has run to change the previous representation or to recharacterize the situation in such a way as to harm the Commissioner. If this test is met, the Commissioner may act as if the previous representation, on which he relied, continued to be true, even if it is not. The taxpayer is estopped to assert the contrary.

*Herrington,* 854 F.2d at 758 (citation omitted); *see also Eagan v. United States,* 80 F.3d 13, 17 (1st Cir.1996); *Estate of Letts,* 109 T.C. at 297.

■ Ashman first rather disingenuously asserts that she made no representation of fact regarding the rollover in her 1990 tax return. She certainly did. She declared as a matter of fact that the amount of the rollover of the $725,502 distribution was $725,502, and that it went to Merrill Lynch. She did not set forth dates. That was a clear representation that she had complied with the requirements of 26 U.S.C. § 402(c)(3), which, in language re-

markably clear in the world of tax law, states that the transfer must be made within 60 days of the receipt of the distribution.

But, Ashman says, the Commissioner should have audited her return. We fail to see why. The Commissioner must, in general, rely upon taxpayers' honesty and accuracy, whether those virtues are grounded on the love of duty or the fear of discovery. The suggestion that he did not rely because he should have suspected her of wrongdoing is a wallydraigle. The mere fact that he did not take steps against her, but accepted the return and let the statute of limitations run, demonstrates that he did rely. *See Herrington*, 854 F.2d at 758; *Mayfair Minerals, Inc. v. Commissioner*, 456 F.2d 622, 623 (5th Cir. 1972).

Finally, Ashman argues, she has not really changed her representations. Rather, she simply made an incorrect legal statement in 1990 and then corrected it in 1993. We reject that argument. As we see it, her representation in 1990 was that, as a matter of fact, she had rolled over the amount within 60 days. She now wants to change that representation; she cannot. *See Kielmar*, 884 F.2d at 965. If she could, she would surely harm the Commissioner; she would have managed to obtain $100,502.21 tax free by misleading him.

In fine, all elements of the duty of consistency doctrine have been established by the Commissioner.

## CONCLUSION

To the extent that there has been any doubt in the past, we now make it clear that the tax court may apply the duty of consistency doctrine in cases which come before it. That means that once a taxpayer has transfigured the true facts, the power to change them back to their old form may well be lost. The taxpayer cannot reshape them at will. Here Ashman swore that in 1990 she had rolled over the whole of her $725,502 distribution from a qualified plan into another qualified plan or account and, therefore, no part of it was taxable. The tax court simply held her to that declaration after the Commissioner relied upon it and let the statute of limitations pass. It became *the* historical fact for this case. Thus, she had to face paying a tax in 1993 when a part of the rolled over 1990 distribution was paid out by GNA.

AFFIRMED.