**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CONRAD JANIS; MARIA G. JANIS,
    *Petitioners-Appellants,*

v.

COMMISSIONER OF INTERNAL
REVENUE,
    *Respondent-Appellee.*

No. 04-74624

Tax Ct. No.
01-14318

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
June 6, 2006—Pasadena, California

Filed August 21, 2006

Before: Stephen Reinhardt, Stephen S. Trott, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

10011

**COUNSEL**

Steven R. Mather and Elliott H. Kajan, Kajan Mather and Barish, Beverly Hills, California, for the petitioners.

Eileen J. O'Connor, Assistant Attorney General, Jonathan S. Cohen and Francesca U. Tamami, Attorneys, Department of Justice, Tax Division, Washington, D.C., for the respondent.

# OPINION

McKEOWN, Circuit Judge:

Conrad Janis and his wife Maria G. Janis ("Petitioners") appeal the Tax Court's holding that they are liable for deficiencies in their joint income tax returns from 1995 through 1997. These deficiencies resulted from Conrad taking inconsistent positions as to the value of an expensive art collection included in his father's estate. On the premise that flooding the market with a large collection of works from significant artists, ranging from Piet Mondrian to Jean Arp and Grandma Moses, would depress the value of the works, Conrad and his brother Carroll Janis, as co-executors and the sole beneficiaries of the estate, calculated a discounted value for the collection. Conrad and Carroll ultimately agreed with the Internal Revenue Service ("IRS") on a discounted valuation of the collection. Some years later, in valuing the gallery's inventory, Petitioners claimed a higher, undiscounted market value as the tax basis for the collection in their joint tax returns. The Tax Court held that Petitioners were bound by the duty of consistency and could not report on their individual tax returns a value different than that stipulated to for the estate tax return. We agree and affirm.

## BACKGROUND

Sidney Janis owned and operated, as a sole proprietorship, the Sidney Janis Art Gallery in New York. The gallery owned almost 500 works of art, many of them by well-known artists. In April of 1988, Sidney transferred the gallery, including the art collection, into a trust, with himself and his children, Conrad and Carroll, as trustees. Upon his death, the remaining trust assets were to be distributed to Conrad and Carroll in equal shares. Sidney died in November of 1989. Conrad and Carroll were named co-executors and the sole beneficiaries of his estate.

After Sidney's death, the estate hired Sotheby's to value the collection. Sotheby's valued the works on an item-by-item basis at fair market value. The appraiser did not account for any diminution in value that might occur in the event the entire holdings were placed in the market at one time. However, the estate calculated a discount—known as a blockage discount—that accounted for the number of pieces in the collection, the nature of the works, and other factors that would affect the actual realized price as a consequence of putting such a large number of works on the market. Each year between 1990 and 1992, Conrad and Carroll filed a fiduciary income tax return for the trust that reported the collection at a blockage discounted value of $12,403,207. With this valuation, the gallery reported a net operating loss each year, thereby minimizing the amount of taxes owed.

After the 1991 tax return was filed, the IRS examined the claimed valuation and agreed that a blockage discount was appropriate. The IRS disagreed, however, with the actual value of the collection. The IRS determined that the undiscounted value of the collection was $36,636,630 and that the appropriate blockage discounted value was $14,500,000, approximately two million dollars higher than the estate's estimate.

In January 1994, Conrad and Carroll consented to the IRS's adjustments and to its discounted valuation of the estate's artwork. Memorializing their agreement, Conrad and Carroll signed Form 890, Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment. The IRS's examination of the artwork valuation was then concluded. The limitations period for assessment against the 1991 estate tax return expired before these proceedings.

In February 1994, despite their earlier agreement with the IRS, Conrad and Carroll filed amended fiduciary income tax returns for 1990-1992, claiming an undiscounted value of $36,636,630 for the collection. This valuation, in turn, created

an even larger net operating loss for the gallery, increasing the tax benefits for Conrad, Carroll, and the trust. In the years 1993 through 1995, Conrad and Carroll similarly filed fiduciary income tax returns for the trust, reporting the value of the collection at its undiscounted value.

The trust was terminated in November 1995, and its assets, including the gallery and the collection, were distributed to Conrad and Carroll in equal shares of ownership. Conrad and Carroll formed a partnership to hold the assets of the gallery, including its collection. The net operating losses reported for the trust between 1990 and 1995 were rolled over into the partnership, a maneuver that allowed Petitioners (as well as Carroll and his wife) to reduce their joint taxable income for 1995, 1996, and 1997. In their tax returns, Petitioners continued to report the collection at the full, undiscounted value of $36,636,630. During this entire period (1990-1997), the individual works of art were not divided between Conrad and Carroll, but instead were kept together in the gallery, with each owning an equal share of the total collection.

Eventually the IRS reviewed Petitioners' individual tax returns (filed jointly) for 1995-1997, as well as the trust tax returns for 1990-1995. The IRS concluded that Petitioners should have used the collection's blockage discounted value of $14,500,000, which had been calculated by the IRS and agreed to by Conrad and Carroll for estate tax purposes. Under this valuation, after adjustments were made, the gallery's (and the trust's) actual net losses between 1990 and 1995 were substantially reduced and the partnership realized a profit for 1996 and 1997. The result was that with the lower valuation of the collection, Petitioners owed more taxes because they were not able to claim the same net operating losses for the gallery and partnership.

The IRS filed a notice of deficiency for the 1995-1997 individual tax returns. Petitioners contested the notice in Tax

Court, which upheld the deficiencies after a one-day trial. *Janis v. Comm'r*, 87 T.C.M. (CCH) 1322 (2004).[1]

## ANALYSIS

### I.  FAIR MARKET VALUE OF THE ART COLLECTION

To determine whether Conrad and Carroll reported the correct value of the gallery for estate tax purposes, the IRS Art Advisory Panel reviewed a sample of the works. The Panel accepted Sotheby's item-by-item valuation to determine the undiscounted value of the collection. Although the Panel did not agree with the specific discounts urged by Conrad and Carroll, it did agree that a blockage discount was appropriate.

As explained by the Panel,

> In general, a blockage discount is applied to property in an estate in an attempt to reflect the market's response to a large number of items. Traditionally . . . a blockage discount is applicable in response to a large number of works by one artist, usually in an artist's estate. The Estate of Sidney Janis is not an artist's estate, and does not involve a large number of works by one particular artist, but rather works by different artists. However, since it is a valuation problem involving a gallery inventory, some of the general principles are applicable.

> A number of factors have been considered in determining whether a blockage discount is appropriate and to what extent it should be applied to the subject properties. Consideration was given to the prominence of the artists; the types of works in the

---

[1]The Tax Court also upheld deficiencies against Carroll and his wife for their 1995-1997 joint tax returns. These deficiencies are not part of this appeal.

estate; the distribution of the items (for example, the number and types, and their quality and saleability); the number of similar items available in the market-place; the market's response to such works around the valuation date; the number of sales and the prices at which sales were made during the period immediately preceding and following death; the annual sales of the gallery; length of time necessary to dispose of the items; the works that are saleable within a relatively short period of time; the works that can only be marketed over a long period; the demonstrated earning capacity of the business; the tangible and intangible assets, including goodwill; and, the reputation of the gallery and the provenance.

*Janis*, 87 T.C.M. at 1324.[2]

[1] Ultimately, Conrad and Carroll stipulated to the Panel's recommendation of the value of the collection for estate tax purposes, $14,500,000. This valuation flowed through to Conrad and Carroll as the heirs of the estate. In valuing inherited property for income tax return purposes, 26 U.S.C. § 1014(a)(1) provides that "the basis of property in the hands of a person acquiring the property from a decedent . . . shall . . . be . . . the fair market value of the property at the date of the decedent's death." Under the tax regulations, 26 C.F.R. § 1.1014-3(a), the estate tax valuation of the inherited property upon the decedent's death is prima facie evidence of the fair market value of the property. *Janis*, 87 T.C.M. at 1328. Consistent with these circumstances, the Tax Court determined that the agreed-upon estate tax value applied to the collection under § 1014 and § 1.1014-3(a). *Id.*

---

[2]The Tax Court has a long history of applying blockage discounts in valuing art collections. *See, e.g.*, *Estate of O'Keeffe v. Comm'r*, 63 T.C.M. (CCH) 2699, (1992); *Calder v. Comm'r*, 85 T.C. 713 (1985); *Estate of Smith v. Comm'r*, 57 T.C. 650, (1972), *aff'd*, 510 F.2d 479 (2d Cir. 1975).

Petitioners argue that the Tax Court's valuation of the collection was a conclusion of law because the facts were stipulated. Under this argument, Petitioners suggest that we do not owe deference to the valuation determination. Petitioners are incorrect.

The Tax Court undertook a detailed analysis whether the basis of each work of art in the collection is the work's undiscounted fair market value, considered whether the blockage discount was appropriate, and made a determination that each work's value "is equal to the proportionately discounted value as determined for estate tax purposes." *Janis*, 87 T.C.M. at 1327-28. This finding of fact was contingent on an analysis of the factual circumstances of the case, and cannot be characterized as a conclusion of law. *See King v. Comm'r*, 857 F.2d 676, 678-79 (9th Cir. 1988) (holding that a determination was factual if it "requires an examination of the totality of the circumstances and a balancing of many relevant factual elements"). The Tax Court did not clearly err in its determination of value. "It is the rule in this Circuit that the Tax Court's determination of the value of property is a finding of fact, which we will reverse only for clear error." *Sammons v. Comm'r*, 838 F.2d 330, 333 (9th Cir. 1988).

## II.  THE DUTY OF CONSISTENCY

Having established the valuation, the Tax Court then invoked the duty of consistency and held that Petitioners "are bound to use the collection's discounted value as their basis for purposes of calculating the gallery's [cost of goods sold] for 1990 through 1997." *Janis*, 87 T.C.M. at 1329. This determination led to a finding of deficiencies for 1995, 1996, and 1997.

[2] As an initial matter, Petitioners argue that the duty of consistency should not be invoked here because it is a suspect doctrine. It is already well established in this circuit that the

duty of consistency serves to prevent inequitable shifting of positions by taxpayers:

> When all is said and done, we are of the opinion that the duty of consistency not only reflects basic fairness, but also shows a proper regard for the administration of justice and the dignity of the law. The law should not be such a idiot that it cannot prevent a taxpayer from changing the historical facts from year to year in order to escape a fair share of the burdens of maintaining our government. Our tax system depends upon self assessment and honesty, rather than upon hiding of the pea or forgetful tergiversation.

*Estate of Ashman v. Comm'r*, 231 F.3d 541, 544 (9th Cir. 2000) (footnote omitted).

   **[3]** *Ashman* laid out the following elements for application of the duty of consistency:

> (1) A representation or report by the taxpayer; (2) on which the Commission[er] has relied; and (3) an attempt by the taxpayer after the statute of limitations has run to change the previous representation or to recharacterize the situation in such a way as to harm the Commissioner. If this test is met, the Commissioner may act as if the previous representation, on which he relied, continued to be true, even if it is not. The taxpayer is estopped to assert the contrary.

*Id.* at 545.[3] We address each element in turn.

---

[3]Petitioners also argue that the duty of consistency was not properly before the Tax Court because it is an affirmative defense that was not included in the government's pleadings. Petitioners are correct that the duty of consistency is an affirmative defense that should be plead, *see Ashman*, 231 F.3d at 542 & n.2, but that rule does not necessarily preclude

## A.  Representation by the Taxpayer

**[4]** The Tax Court held that the first element, representation by the taxpayer, was satisfied by Conrad and Carroll's agreement with the IRS's valuation of the collection. *Janis*, 87 T.C.M. at 1329. This agreement is evidenced by extension of Form 890, in which they agreed, as executors of the estate, that the fair market value of the collection was $14,500,000.

Petitioners argue that Form 890 is not properly used as a "representation by a taxpayer" because the form only constitutes the estate's consent to an assessment of estate tax, and that the valuation has nothing to do with Petitioners' joint tax returns. We are not persuaded by these arguments.

**[5]** Conrad had overlapping and co-extensive interests as a beneficiary and co-executor of the estate. To allow Conrad to take inconsistent positions in the estate matter and then in his 1995-1997 joint tax returns filed with his wife Maria would gut the duty of consistency, which "is usually understood to encompass both the taxpayer and parties with sufficiently identical economic interests." *LeFever v. Comm'r*, 100 F.3d 778, 788 (10th Cir. 1996). As an heir, Conrad had an economic interest in reducing the value of the taxable estate, and as a co-executor, he had privity of interest with the estate, thus making the duty of consistency appropriate under these

the Tax Court from considering the doctrine. The Tax Court Rules of Practice and Procedure provide that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tax Court Rule 41(b) (2003). Petitioners implicitly consented to consideration of this issue; they did not object when the government raised the doctrine in its motion for summary judgment and in its trial memorandum. *See Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) (allowing affirmative defense that was raised for the first time in a summary judgment motion, where the opposing party did not object and was not prejudiced); *see also Ahmad v. Furlong*, 435 F.3d 1196 (10th Cir. 2006) (collecting cases). Their objection at this stage of the proceedings is far too late.

circumstances. *See id.* at 789 (holding that heirs to an estate were bound by the duty of consistency when they have economic interest and sufficient privity in the estate tax matters); *see also Hess v. United States*, 537 F.2d 457, 464 (Ct. Cl. 1976) (holding that when the taxpayer has sufficient economic interests in both an estate and a trust, then the taxpayer is bound to the earlier representation); *Letts v. Comm'r*, 109 T.C. 290, 298-99 (1997) (applying the duty of consistency to bind taxpayers to representations made on estate tax returns when those taxpayers were heirs and fiduciaries to the estate).

In a case that is remarkably similar to the situation here, the Eighth Circuit held that a brother and sister who were co-executors of and heirs to an estate were individually bound by the duty of consistency to their representations made in an estate tax return. *Beltzer v. United States*, 495 F.2d 211, 211-13 (8th Cir. 1974). The sibling taxpayers represented the value of stock held by the estate as a reduced value, thereby minimizing the estate tax. *Id.* at 211. After inheriting the stock, the taxpayers sold the stock at a much higher value. *Id.* In order to circumvent the high capital gains tax on their individual tax returns, the taxpayers claimed the stock was undervalued when the estate tax was filed. *Id.* at 212. The IRS responded by pointing out that the statute of limitations had run on the estate tax return, which prevented the IRS from assessing a deficiency against the stock for the earlier undervalued representation. *Id.* The court held that the duty of consistency binds the taxpayers to the earlier estate tax representation. *Id.* at 212-13.

Conrad was not only a beneficiary of the estate—giving him ample economic interest in minimizing the estate taxes—he was also a co-executor of the estate—giving him a clear fiduciary duty. As co-executor and beneficiary of the estate, Conrad had an incentive to *minimize the value of the collection*, thereby minimizing the estate's tax and maximizing his inheritance. Once the estate was distributed, Conrad had an incentive to *maximize the value of the collection* to increase

the gallery's net operating losses, which in turn reduced Petitioners' taxable income. Petitioners seek to blunt this inconsistency by arguing that the blockage discount was warranted at death because the collection was valued as a whole but that similar concerns are not present after they inherited part of the gallery. Although this argument may have some surface appeal, it ignores the fact that the gallery collection remains largely intact and that the flip-flop in position is precisely the circumstance targeted by the duty of consistency.

As we observed in *Ashman*, the duty of consistency is designed to prevent parties from "blow[ing] hot and cold as suits [their] interests in tax matters." *Ashman*, 231 F.3d at 544 (internal quotation marks omitted). "[A] taxpayer may not, after taking a position in one year to his advantage and after correction for that year is barred, shift to a contrary position touching the same fact or transaction." *Id.* at 543 (internal quotation marks omitted).

### B. RELIANCE BY THE IRS COMMISSIONER AND CHANGE IN REPRESENTATION BY THE TAXPAYER AFTER THE STATUTE OF LIMITATIONS HAS RUN

[6] The second and third elements of the duty of consistency are also present here—reliance by the Commissioner and, after the limitations period, a change in position by the taxpayer that is harmful to the Commissioner. The IRS relied on Form 890, which contained Conrad's agreement with the discounted valuation of the collection, and thereafter allowed the statute of limitations to run on further assessment of the 1991 estate tax return.[4] Conrad changed his position only after

---

[4]Petitioners argue that the Commissioner could not reasonably rely on Form 890 because under 26 U.S.C. § 7121, Petitioners may be able to seek a refund for tax returns where the limitations period has run on further assessment, citing *Whitney v. United States*, 826 F.2d 896 (9th Cir. 1987). Although it is true that in certain circumstances taxpayers may apply for a refund for time-barred returns, neither *Whitney* nor § 7121 address the duty of consistency. Equity would be remiss if this statutory benefit to the taxpayer were twisted to avoid the duty of consistency.

the limitations period ran. The Commissioner was surely prejudiced by this change in position because the Commissioner can no longer collect the tax deficiency occasioned by Petitioners' turnabout. Such tax gamesmanship is exactly what the duty of consistency is designed to prevent.

**AFFIRMED.**