T.C. Memo. 2010-20

UNITED STATES TAX COURT

GREGORY A. AND CAROLYN S. PROUGH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11114-07.                    Filed February 3, 2010.

<u>Edith F. Moates</u>, for petitioners.

<u>Huong T. Bailie</u>, for respondent.

MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  Respondent determined an $8,700 deficiency
in petitioners' Federal income tax and a $1,740 accuracy-related
penalty under section 6662[1] for 2004.  We are asked to decide
whether distributions petitioner husband (petitioner) received

---

[1]All section references are to the Internal Revenue Code in
effect for 2004, and all Rule references are to the Tax Court
Rules of Practice and Procedure, unless otherwise indicated.

from his retirement accounts are subject to the 10-percent additional tax on early distributions if they fail to qualify for the exception for substantially equal periodic payments under section 72(t)(2)(A)(iv). We find that they are subject to the additional tax. We are also asked to decide whether petitioners are liable for the accuracy-related penalty under section 6662(a). We hold that they are.

## Background

This case was submitted fully stipulated under Rule 122. The stipulation of facts and the accompanying exhibits are incorporated by this reference. The facts are so found. Petitioners resided in Nevada at the time they filed the petition.

Petitioner was born in 1951. He retired from Southwestern Bell Telephone in 2003 when he was 52 and received almost $1 million of lump-sum distributions from qualified retirement plans. The lump-sum distributions consisted of $37,025,[2] $13,296, $669,665, and $187,857. He rolled over the distributions tax free to qualified individual retirement annuities from Jefferson National Life Insurance (Jefferson National annuity) and Nationwide Life Insurance Company (Nationwide annuity) in 2003. Petitioner had a life expectancy

---

[2]All monetary amounts are rounded to the nearest dollar.

of 32.3 years at that time.  See sec. 1.401(a)(9)-9, Q&A-1, Income Tax Regs.

The Jefferson National Life Insurance Annuity

Petitioner rolled over the $669,665 distribution to the Jefferson National annuity.  The annuity contract contained an individual retirement annuity (IRA) endorsement (IRA endorsement) providing that the contract is governed by section 408(b).  An IRA endorsement meant that early distributions would be subject to the 10-percent additional tax under section 72(t).

Petitioner signed a One-Time or Systematic Partial Withdrawal Request Form (withdrawal form) approximately one week after entering into the Jefferson National annuity contract.  The withdrawal form, prepared by Aspen Retirement Planning Services (Aspen Retirement), authorized monthly distributions of $5,600 from the Jefferson National annuity.  The record does not indicate how the $5,600 monthly distribution amount was determined.  The withdrawal form indicates, however, that the distributions qualify for section 72(t).  Jefferson National started making the $5,600 monthly distributions to petitioner on August 17, 2003.  The Jefferson National annuity had a fair market value of $716,676 as of the end of 2003.

Petitioner signed another withdrawal form on February 4, 2004, authorizing a one-time "hardship withdrawal" of $45,000 from the Jefferson National annuity.  Petitioners concede that

the $45,000 hardship withdrawal distribution is subject to the 10-percent additional tax for early distributions even though they failed to report the additional tax on the return for 2004.

Jefferson National issued to petitioners a Form 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. (1099-R), for 2004 reporting a gross distribution of $112,200 from the annuity. The gross distribution amount for 2004 included the $45,000 hardship withdrawal and $67,200 of systematic partial withdrawal payments (the $5,600 monthly amount times 12 months). The 1099-R indicated that the distribution was from an "IRA/SEP/SIMPLE" and listed a distribution code of "1" indicating that it was an early distribution for which there was no known exception to the additional tax. See IRS Announcement 2004-3, 2004-1 C.B. 294. Petitioners reported the total distribution on the return for 2004 but failed to report that any portion was subject to the additional tax.

Nationwide Life Insurance Company

Petitioner rolled over $170,000 of the distributions to the Nationwide annuity. The Nationwide annuity contract contained an IRA endorsement providing that the contract is governed by section 408(b). The Nationwide annuity contract also contained a separate IRA Disclosure Statement advising that early distributions would be subject to the 10-percent additional tax.

Petitioner signed a withdrawal form approximately one week after entering into the annuity contract with Nationwide. The withdrawal form, prepared by Aspen Retirement, authorized monthly distributions of $1,400 from the Nationwide annuity. The record does not indicate how the $1,400 monthly amount was calculated. Nationwide determined that a maximum of $757 could be withdrawn per month if the distributions were to qualify for an exception to section 72(t). Nationwide started making the $1,400 monthly distributions to petitioner on August 17, 2003. The Nationwide annuity had a fair market value of $172,820 at the end of 2003.

Nationwide issued to petitioners a 1099-R for 2004 reporting a gross distribution of $16,800 (the $1,400 monthly amount times 12 months). The 1099-R indicated that the distribution was from an "IRA/SEP/SIMPLE" and listed a distribution code of "1" indicating that it was an early distribution for which there was no known exception to the additional tax. See IRS Announcement 2004-3, supra. Petitioners reported the distribution on the return for 2004 but failed to report that it was subject to the additional tax.

The Return for 2004

Petitioners reported taxable pensions and annuities totaling $136,000 on the return for 2004.[3]  Petitioners reported that only $49,000 of the $136,000 constituted an early distribution and reported additional tax of $4,900.  The record does not indicate how petitioners determined the taxable amount.  Respondent issued petitioners a deficiency notice determining that the entire distribution constituted an early distribution and therefore determined an $8,700 deficiency.  The deficiency notice also determined the accuracy-related penalty based on substantial understatement of income tax.  Petitioners timely filed a petition to contest the determinations in the deficiency notice.

## Discussion

We are asked to determine the taxability of distributions petitioner received in 2004 when he was 52 years old.  Section 72(t) imposes a 10-percent additional tax on early distributions from a retirement plan because they "frustrate the intention of saving for retirement, and * * * [the additional tax] discourages this from happening."  Dwyer v. Commissioner, 106 T.C. 337, 340 (1996) (citing S. Rept. 93-383, at 134 (1973), 1974-3 C.B. (Supp.) 80, 213).  We are asked to decide whether the distributions petitioner received qualify for an exception to the

---

[3]Petitioners also received a $7,000 distribution from a Fiserv Securities, Inc. account for which they concede they are liable for the 10-percent additional tax on early distributions.

10-percent additional tax on early distributions under section 72(t) and whether petitioners are liable for the section 6662(a) accuracy-related penalty.  We address each of these issues in turn.

## I.  10-Percent Additional Tax for Early Distribution

Respondent argues that petitioner is liable for the 10-percent additional tax on early distributions because petitioner was under 59-1/2 years of age at the time he received the distributions and the distributions do not qualify for an exception under section 72(t)(2).  Petitioners argue that section 72(q), rather than section 72(t), applies to the distributions because the distributions were from annuities.  Petitioners fail to distinguish between nonqualified and qualified annuity contracts, however, which are treated under different sections of the Code.[4]  The distinction is irrelevant here, though, because

---

[4]Sec. 72(q) provides for a 10-percent additional tax on early distributions from nonqualified annuity contracts while sec. 72(t) provides for the additional tax on early distributions from qualified retirement plans described in sec. 4974(c). Individual retirement annuities described in sec. 408(b) constitute qualified retirement plans under sec. 4974(c), and are thus subject to the additional tax for early distribution under sec. 72(t).  Sec. 72(t) applies here because the Jefferson National and Nationwide annuities were qualified individual retirement annuities under sec. 408(b).  Furthermore, petitioners are estopped under the duty of consistency from arguing that the annuities were nonqualified.  See Estate of Ashman v. Commissioner, T.C. Memo. 1998-145, affd. 31 F.3d 41 (9th Cir. 2000).  Accordingly, we will apply sec. 72(t), rather than sec. 72(q), to determine whether the distributions qualify for an exception to the additional tax.

the section 72(q) exception claimed by petitioners also appears in section 72(t).  See IRS Notice 2004-15, 2004-1 C.B. 526.

A 10-percent additional tax is generally imposed on a distribution from a qualified retirement plan to a taxpayer who has not reached the age of 59-1/2.  Sec. 72(t)(1), (2)(A)(i). There are some exceptions to the additional tax, however, and taxpayers bear the burden of proving that a particular exception applies.  Bunney v. Commissioner, 114 T.C. 259, 265 (2000). There is an exception for distributions that are part of a series of substantially equal periodic payments made for the life or life expectancy of the taxpayer or the joint lives or joint life expectancies of the taxpayer and his designated beneficiary. Sec. 72(t)(2)(A)(iv).  Petitioners argue that the monthly distributions from the Jefferson National and Nationwide annuities qualify for this exception.  We disagree.

The Internal Revenue Service has issued guidance that amounts calculated under one of three methods (the IRS Notice 89-25 methods) may qualify for the exception.  IRS Notice 89-25, Q&A-12, 1989-1 C.B. 662, 666.  Additionally, this Court has held that conforming to one of the IRS Notice 89-25 methods may relieve a taxpayer of the 10-percent additional tax.  See Arnold v. Commissioner, 111 T.C. 250, 252 n.1 (1998).  The IRS Notice 89-25 methods include: (1) the required minimum distribution method, (2) the fixed amortization method, or (3) the fixed

annuitization method.[5]  See IRS Notice 89-25, Q&A-12, <u>supra</u>; Rev.
Rul. 2002-62, 2002-2 C.B. 710.  Each of these three methods takes
into account the taxpayer's life expectancy.  See IRS Notice 89-
25, Q&A-12, <u>supra</u>.

Petitioners have failed to prove that the distribution
amounts were based on any of the IRS Notice 89-25 methods.  The
record does not identify which, if any, method Aspen Retirement
used in calculating the amount of distributions.  In fact, the
monthly distributions petitioner received were more than double
the maximum amounts determined by respondent under the fixed
amortization and fixed annuitization methods.[6]  Petitioners

---

[5]Maximum payments under the fixed amortization method are
determined by amortizing the account balance over the taxpayer's
life expectancy at a reasonable interest rate.  Rev. Rul. 2002-
62, sec. 2.01(b), 2002-2 C.B. at 710.  Maximum payments under the
fixed annuitization method are determined by dividing the account
balance by an annuity factor based on the taxpayer's life
expectancy and a reasonable interest rate.  <u>Id.</u> sec. 2.01(c),
2002-2 C.B. at 710.  A reasonable interest rate for each method
is not more than 120 percent of the Federal midterm rate
determined in accordance with sec. 1274(d) for either of the two
months preceding the month in which the distribution begins.  <u>Id.</u>
sec. 2.02(c), 2002-2 C.B. at 711.

[6]Respondent applied interest rates of 3.68 percent and 3.06
percent, reflecting 120 percent of the Federal midterm rates for
June 2003 and July 2003.  See Rev. Rul. 2003-60, 2003-1 C.B. 987,
988; Rev. Rul. 2003-71, 2003-2 C.B. 1, 2.  Respondent determined
the maximum monthly distribution amount from the Jefferson
National annuity under the fixed amortization method was $2,981
per month and the maximum monthly amount under the fixed
annuitization method was $2,963.  Respondent determined the
maximum monthly distribution amount from the Nationwide annuity
under the fixed amortization amount was $757 per month, and the
maximum monthly amount under the fixed annuitization method was
(continued...)

assert that Aspen Retirement based the monthly distributions on a 10-percent annual rate of return for variable annuities but have not established that a 10-percent rate of return is reasonable. In comparison, a reasonable rate of return for annuity distributions beginning in August 2003 under either the fixed amortization or fixed annuitization methods would be 3.06 percent or 3.68 percent. See Rev. Rul. 2002-62, sec. 2.02(c), 2002-2 C.B. at 711; Rev. Rul. 2003-60, 2003-1 C.B. 987, 988; Rev. Rul. 2003-71, 2003-2 C.B. 1, 2. Petitioners also claim that the distributions were calculated so as to continue over petitioner's lifetime without depleting the account. Petitioners have not provided any documentation or testimony from Aspen Retirement explaining what factors they considered in determining the distribution amount for either annuity.

Furthermore, it is unclear how the distributions could have been substantially equal periodic payments made for petitioner's life expectancy, given the annuity account balances and petitioner's age and life expectancy in 2003. Petitioner was 52 years of age and had a life expectancy of 32.3 years at the time the distributions commenced in 2003. See sec. 1.401(a)(9)-9, Q&A-1, Income Tax Regs.[7] The Jefferson National annuity had a

---

[6](...continued)
$752.

[7]The single life expectancy table found at sec. 1.401(a)(9)-
(continued...)

value of $716,676 and the Nationwide annuity had a value of

$172,820 at the end of 2003.  Petitioner could receive

distributions of only $1,849 per month from the Jefferson

National annuity, rather than $5,600, to avoid depleting the

account during his lifetime.[8]  Similarly, petitioner could

receive monthly distributions of only $425, rather than $1,400,

from the Nationwide annuity.

Accordingly, we conclude that petitioners have not shown

that the distributions from the Jefferson National and Nationwide

annuities were substantially equal periodic payments exempt from

the additional tax under section 72(t).

II.  Accuracy-Related Penalty

We next consider whether petitioners are liable for the

accuracy-related penalty under section 6662(a).  A taxpayer is

liable for an accuracy-related penalty of 20 percent of any

portion of an underpayment attributable to, among other things, a

substantial understatement of income tax under section 6662(b)(2)

if the amount of the understatement exceeds the greater of either

10 percent of the tax required to be shown on the return, or

---

[7](...continued)
9, Q&A-1, Income Tax Regs., is used for determining the life
expectancy of an individual for purposes of these calculations.

[8]We reach this conclusion without taking into account any
rate of return on the annuity.  We have not applied the 10-
percent rate of return used by Aspen Retirement because
petitioners have not established that it was reasonable.

$5,000. Sec. 6662(a), (b)(2), (d)(1)(A); sec. 1.6662-4(a) and (b)(i) and (2), Income Tax Regs. Petitioners reported that they owed $12,956 of tax for 2004 and respondent determined upon examination that petitioners owed $21,656. Petitioners therefore understated the tax on the return by $8,700, which is greater than 10 percent of the tax required to be shown on the return, or $5,000.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment, however, if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability and the knowledge and experience of the taxpayer. Sec. 1.6664-4(b)(1), Income Tax Regs. The taxpayer bears the burden of proof with respect to reasonable cause. Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Petitioners argue that they should be absolved from the penalty because they had reasonable cause for failing to report

the entire amount as taxable.[9]  We disagree.  Nationwide informed

petitioners that the distributions did not qualify as

substantially equal periodic payments exempt from the section

72(t) additional tax and the Jefferson National withdrawal

request specifically indicated that the distribution was subject

to section 72(t).  Moreover, the 1099-Rs issued by Jefferson

National and Nationwide indicated that all the distributions were

early distributions for which no exception to the additional tax

applied.  We find that petitioners have not shown reasonable

cause for failing to report the entire amount as taxable.

Petitioners also claim that they relied on Aspen

Retirement's computations to argue that they were eligible for

the substantially equal periodic payments exception.  Good faith

reliance on the advice of an independent, competent professional

as to the tax treatment of an item may fulfill the reasonable

cause requirement.  See Neonatology Associates, P.A. v.

Commissioner, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir.

2002).  Petitioners have not shown, however, how Aspen Retirement

calculated the distributions, nor have they shown how they could

_____

[9]Petitioners also seek relief on the grounds that they
disclosed the distributions on the return.  See sec.
6662(d)(2)(B)(ii).  Disclosure is adequate with respect to an
item or a position on a return only if it was made on a Form
8275, Disclosure Statement, or Form 8275-R, Regulation Disclosure
Statement, attached to the return or on a qualified amended
return for the taxable year.  See Kelly v. Commissioner, T.C.
Memo. 1996-529; sec. 1.6662-4(f)(1), Income Tax Regs.  We find
that petitioners failed to adequately disclose the distributions.

have relied upon any such calculations given the other documentary evidence that no exception applied.  Accordingly, we sustain respondent's determination that petitioners are liable for the accuracy-related penalty under section 6662(a) for 2004.

We have considered all remaining arguments the parties made and, to the extent not addressed, we conclude they are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.