T.C. Memo. 2016-224

UNITED STATES TAX COURT

WASCO REAL PROPERTIES I, LLC, GARDINER FAMILY TRUST, TAX MATTERS PARTNER, ET AL.,[1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 8111-12, 8112-12, 8113-12.

Filed December 13, 2016.

P1, P2, and P3 are treated as partnerships for Federal tax purposes and are in the business of farming almonds. Each P financed the purchase of land, all or a portion of which it used to plant and grow almond trees for use in its business. The financing was from third parties, except that P1 also borrowed funds from P2 and P3, which contemporaneously had borrowed those funds from a third party. P2 and P3 paid interest to the third party as to the funds they lent to P1, but P1 did not pay any interest to P2 or to P3. Ps deducted the interest that they paid to the third parties. P1 also deducted property taxes that it paid as to its land. R disallowed the

[1]Cases of the following petitioners are consolidated herewith: Rosedale Ranch, A General Partnership, Rosedale Farming Group, Tax Matters Partner, docket No. 8112-12; and King and Gardiner Farms, LLC, Keith Gardiner, Tax Matters Partner, docket No. 8113-12.

[*2]  deductions on the grounds that I.R.C. sec. 263A requires that the taxes and the interest be capitalized rather than deducted. R also made adjustments under I.R.C. sec. 481 to reflect a change in method of accounting for each P with respect to the taxes and the interest.

Held: I.R.C. sec. 263A(a)(2)(B) requires that P1 capitalize the property taxes corresponding to the portion of its land on which it grew almond trees in that this portion of the taxes is an allocable, indirect cost of P1's growing (and thus producing) the almond trees.

Held, further, I.R.C. sec. 263A(a) and (f)(1) and (2) requires that each P capitalize the interest corresponding to the portion of its land on which it grew almond trees in that this portion of the interest is allocable to the almond trees, the property that each P produced.

Held, further, the antiabuse rule in sec. 1.263A-15(c), Income Tax Regs., requires to the extent stated herein that P2 and P3 capitalize the interest they paid to the third party with respect to the funds they contemporaneously lent to P1 in that their loans to P1 were related party transactions that avoided the interest capitalization rules of secs. 1.263A-8 through 1.263A-15, Income Tax Regs., and did not carry out the purposes of I.R.C. sec. 263A(f).

Held, further, R's adjustments under I.R.C. sec. 481 are sustained to the extent that Ps must change their methods of accounting to capitalize the taxes and the interest in lieu of deducting those items currently.

Steven R. Mather and Lydia B. Turanchik, for petitioners.

Shirley H. Mao and Ronald M. Rosen, for respondent.

[*3]          MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, Judge:  These consolidated cases are partnership-level proceedings subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, sec. 401, 96 Stat. at 648.  The relevant "partnerships" are Wasco Real Properties I, LLC (WRP I); Rosedale Ranch, A General Partnership (Rosedale Ranch); and King and Gardiner Farms, LLC (K&G) (collectively, entities, unless the context indicates otherwise).  These cases concern the entities' 2008 and 2009 taxable years and for K&G its 2007 taxable year as well (we hereinafter use the term "subject years" to refer collectively to 2007, 2008, and 2009 in the case of K&G and to 2008 and 2009 in the case of each of the other two entities).

The entities were owned directly or indirectly by a group of individuals who were involved in the business of farming almonds.  The entities separately purchased land before the subject years, and each entity thereafter planted and grew almond trees on its land.  The entities paid interest relating to debt incurred to purchase the land, and they deducted the interest during the subject years.  For 2008 and 2009 WRP I also deducted property taxes that it paid as to its land.

[*4]  Respondent issued separate notices of final partnership administrative adjustment (FPAAs) to the tax matters partners (TMPs) of the entities, disallowing the deductions because, in respondent's view, section 263A required that the interest and the taxes be capitalized.[2]  Respondent also made adjustments under section 481 because capitalizing those costs resulted in each entity's changing its accounting method as to the costs.  The amounts of respondent's adjustments as to those items are as follows:

### WRP I

| Item | 2008 | 2009 |
|------|------|------|
| Interest | $792,645 | $564,932 |
| Taxes | 117,232 | 141,022 |
| Sec. 481(a) adjustment | 61,313 | --- |

### Rosedale Ranch

| Item | 2008 | 2009 |
|------|------|------|
| Interest | $951,023 | $1,220,004 |
| Sec. 481(a) adjustment | 765,975 | --- |

---

[2]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) in effect for the subject years.  Rule references are to the Tax Court Rules of Practice and Procedure.

[*5]                                         K&G

| Item | 2007 | 2008 | 2009 |
|------|------|------|------|
| Interest | $80,855 | $652,142 | $223,563 |
| Sec. 481(a) adjustment | 239,935 | --- | --- |

We must decide the correctness of these adjustments.[3] We hold that WRP I must capitalize the property taxes to the extent that the taxes are allocable to the portion of the land on which WRP I grew its almond trees. Each entity must capitalize the interest on the debt allocable to the portion of its land on which it grew its almond trees. Pursuant to the antiabuse rule in section 1.263A-15(c), Income Tax Regs., Rosedale Ranch and K&G to the extent stated herein must capitalize interest that they paid on funds that they borrowed and contemporaneously lent to WRP I. And respondent's adjustments under section 481 are sustained to the extent stated herein.

## FINDINGS OF FACT

Each entity in these consolidated cases is treated as a partnership for tax purposes and uses the cash method for tax purposes. Each had its principal place of business in California when the petition relating to it was filed.

---

[3]Respondent also made other adjustments, none of which we need or do decide. We do not list these other adjustments.

**[*6]** I.      Entities

The entities are all owned directly or indirectly by one or more members of a common group of individuals and trusts.  The individuals and trusts are Keith Gardiner, Jennifer T. Gardiner (wife of Keith Gardiner), Jeffrey H. Townsend, Carol S. Townsend (now Adamson, ex-wife of Jeffrey Townsend and sister of Keith Gardiner), the Mary D. King Trust, and the Gardiner Family Trust.  We detail below the specific members who own each of the entities and other relevant connections that the members have to one another.

A.     WRP I

WRP I is a limited liability company registered in the State of California.  WRP I is engaged in a farming business.  WRP I was formed in 2007 and is owned 50% by the Gardiner Family Trust, 30% by Rosedale Farming Group, and 20% by the Mary D. King Trust.

Keith and Jennifer Gardiner are trustees of the Gardiner Family Trust, which in turn is the TMP for WRP I.  Jeffrey and Carol Townsend equally own Rosedale Farming Group, a general partnership.  Frank L. King, Jr., is the trustee of the Mary D. King Trust.

**[*7]**   B.   Rosedale Ranch

Rosedale Ranch is a general partnership registered in the State of California. Rosedale Ranch is engaged in a farming business. Rosedale Ranch was formed in 2002 and is equally owned by Rosedale Farming Group and by Gardiner Family, LLC.

Gardiner Family, LLC, is equally owned by Keith and Jennifer Gardiner. Rosedale Farming Group is the TMP for Rosedale Ranch.

C.   K&G

K&G is a limited liability company registered in the State of California. K&G is engaged in farming and commercial real estate businesses. K&G was formed in 1995 and is equally owned by Keith Gardiner and by the Mary D. King Trust. Keith Gardiner is the TMP for K&G.

II.   Wasco Property

In early 2007 Jackson & Perkins listed for sale approximately 3,200 acres of farmland and other assets (collectively, Wasco property) in Wasco, California. Mr. Gardiner believed that the farmland (Wasco land) was some of the best property in the world. Jackson & Perkins are famous for their roses, and they required that a buyer of the Wasco property let them finish growing and harvesting the roses that were already growing on the Wasco land, in exchange for which

[*8] Jackson & Perkins would pay rent. Along with the Wasco land, Jackson & Perkins required the buyer to purchase the other assets, consisting of several buildings on the property and a significant amount of equipment.

### A. Purchase of Wasco Property

In 2007 Mr. Gardiner and his business associates formed WRP I and Wasco Real Properties II, LLC (WRP II), for the purpose of acquiring the Wasco property.[4] Mr. Gardiner had been active in almond farming for many years. Before WRP I was formed, about 70% of the business activities of various partnerships owned by Mr. Gardiner and his associates involved almond farming.

On April 27, 2007, WRP I and WRP II purchased the Wasco property for $29,057,500. Of that amount, WRP I contributed $24,550,000 and WRP II contributed $4,507,500. WRP I received approximately 2,995 acres of the Wasco land, and WRP II received the remaining approximately 205 acres.

The $24,550,000 contributed by WRP I came from the following sources: two direct loans totaling $12,300,000 from an independent third party, Farm Credit West (FCW); two loans totaling $7,350,000 from Rosedale Ranch; and two loans totaling $4,900,000 from K&G. Rosedale Ranch and K&G contributed to

---

[4]WRP II is owned equally by Rosedale Farming Group and the Gardiner Family Trust. WRP II was formed because the Mary D. King Trust did not want to take part in purchasing the commercial buildings.

[*9] the acquisition of the Wasco property to allow the related entities to pool their almond crops, which would allow them to obtain premium pricing and generally give them more leverage in negotiations.

### 1. Loans From FCW

WRP I used the entire $12,300,000 in loans from FCW to purchase the Wasco property.

In 2007 WRP I did not pay any interest to FCW with respect to the borrowing of the $12,300,000, and accordingly, WRP I did not claim a deduction for any interest relating to that borrowing on its tax return for 2007. In 2008 and 2009 WRP I paid interest to FCW on the underlying loans and claimed deductions for the corresponding total interest that it paid to FCW during each of those years on its tax returns for 2008 and 2009.

### 2. Loan From Rosedale Ranch

The $7,350,000 loan to WRP I from Rosedale Ranch consisted of $1,470,000 of its own cash plus the proceeds of a $5,880,000 loan it received from FCW.

Rosedale Ranch obtained the FCW loan on April 24, 2007, and immediately lent the $5,880,000 to WRP I to use to purchase the Wasco property. Because of an oversight, WRP I and Rosedale Ranch did not execute a promissory note for the

[*10] loan until April 2008. WRP I did not pay any interest to Rosedale Ranch during the subject years because the Wasco property did not generate income sufficient for WRP I to pay the interest due. In July 2010 Rosedale Ranch and WRP I amended the promissory notes to defer the payments of accrued interest and principal until January 1, 2016, when WRP I's almond trees were expected to produce income sufficient for it to pay the interest.

In 2007 Rosedale Ranch did not pay any interest to FCW with respect to the $5,880,000 loan, and accordingly, it did not claim a deduction for any interest relating to that loan on its tax return for 2007. In 2008 and 2009 Rosedale Ranch paid interest to FCW and claimed deductions for the corresponding interest that it paid to FCW during each of those years on its tax returns for 2008 and 2009.

### 3. Loan From K&G

On April 24, 2007, K&G borrowed $980,000 from a line of credit that it had with FCW and also obtained from FCW an unrelated loan of $3,943,000. K&G loaned $4,900,000 of the $4,923,000 ($980,000 + $3,943,000) to WRP I, as discussed above. WRP I did not make any of the scheduled interest payments. On July 1, 2010, WRP I and K&G amended the promissory notes to defer the payments of the accrued interest and principal until January 1, 2016, when

[*11] WRP I's almond trees were expected to produce income sufficient for WRP I to pay the interest.

In 2007 K&G paid interest to FCW on the line of credit loan. K&G claimed a deduction for the interest on its tax return for 2007. In 2008 and 2009 K&G paid interest to FCW on both the line of credit loan and the $3,943,000 loan and claimed deductions for the corresponding total interest that it paid to FCW during 2008 and 2009 on its tax returns for those years.

### B.    WRP I Almond Tree Development Loans

The Wasco land did not have any almond trees on it when WRP I purchased its portion of that land in 2007. At the time of that purchase the Wasco land had row crops growing on it, including roses, corn, wheat, and carrots. Row crops are nonpermanent crops that have a specific growing season.

WRP I endeavored to use at least its portion of the Wasco land to grow almond trees. To finance the costs associated with planting and growing almond trees, WRP I incurred additional debt. In 2007 Treehouse Almonds (Treehouse) provided a revolving line of credit with a $3.5 million limit. With one exception, WRP I's production expenditures were financed entirely by debt. The exception is that $111,147 of expenditures was paid through rental income in 2007. For each

[*12] of the subject years in issue, WRP I capitalized the corresponding interest paid on the Treehouse line of credit loan.

C.     WRP I Almond Tree Development

During 2007 WRP I began the first of three phases to grow almond trees on 254.1 acres of its Wasco land.[5]  WRP I used this phased approach because roses were still growing on part of the Wasco land and because WRP I did not have the resources to plant the entire property with almond trees at once.  In the first phase WRP I constructed extensive underground irrigation systems and built reservoirs.  WRP I also ripped and deep ripped the soil as well as leveled and trenched the land.

WRP I leased the rest of its Wasco land in separate portions to Jackson & Perkins and to Gardiner Farms.  As part of the purchase agreement, Jackson & Perkins leased from WRP I Jackson & Perkins' portion of the Wasco land while cycling out its roses.  Gardiner Farms leased from WRP I Gardiner

_____

[5]As evidence of when the entities planted almond trees on specific tracts of land, petitioners included two exhibits.  One is annual maps of the lands with incomplete notations of when almond trees were planted.  The other is a table listing when almond trees were planted on specific tracts of land.  That table, however, was prepared after the fact and for accounting purposes.  We find the maps to be more reliable.  Accordingly, we have determined when almond trees were planted on various tracts of land by using information on the maps.  Where the information on the maps is incomplete, we have looked to the subsequently prepared table.

[*13] Farms' portion of the Wasco land to grow row crops. WRP I leased a portion of the Wasco land to Gardiner Farms, in lieu of WRP I's planting its own crops on that land, because the rent that WRP I received on that lease provided it with a necessary cashflow. WRP I also did not have the proper equipment to plant its own row crops.

In 2008 WRP I was growing almond trees on 2,034.61 acres of the Wasco land and was growing row crops on other parts of the Wasco land. Jackson & Perkins and Gardiner Farms continued to lease the remaining portions of WRP I's Wasco land to grow row crops. For 2008 WRP I's production debt exceeded its production expenditures.

In 2009 WRP I was growing almond trees on 2,259.61 acres of the Wasco land and was growing row crops on other parts of the Wasco land. That year WRP I began phases 2 and 3 of growing almond trees. Phase 2 included planting almond trees as well as general maintenance. Phase 3 included additional tree planting and various other maintenance activities. For 2009 WRP I's production debt exceeded its production expenditures.

**[\*14]** D.    WRP I Payment of Property Taxes on Wasco Land

WRP I paid $61,313, $117,232, and $141,022 in property taxes on the Wasco land during 2007, 2008, and 2009, respectively.  WRP I claimed corresponding deductions for these payments on its tax returns for those years.

III.    Weidenbach Property

In 2006 Rosedale Ranch leased and paid rent for a portion of land (Weidenbach property) that includes approximately 240 acres in Shafter, California.  Rosedale Ranch owned a piece of property adjacent to the Weidenbach property that it was attempting to develop.  If another buyer had purchased the Weidenbach property, it might have affected Rosedale Ranch's access to the property it already owned.  Rosedale Ranch began growing almond trees on the Weidenbach property during 2006, and it used the land only for growing almond trees.

On February 13, 2007, Rosedale Ranch purchased the Weidenbach property using the proceeds of a loan from FCW of $16,828,000.  Rosedale Ranch paid interest to FCW as to the $16,828,000 loan in 2007, 2008, and 2009.  Rosedale Ranch claimed deductions for the corresponding interest that it paid to FCW for those years.

**[*15]** IV.  Wood Stone Property

In May 2005 K&G purchased approximately 1,685 acres of land (Wood Stone property) from Wood Stone Ranches, LLP.  Almond trees were already planted on the Wood Stone property in 2005, and K&G eventually planted the Wood Stone property with almond trees and pistachio trees.  The seller financed $2,534,675 of the purchase price, and the principal and interest were payable over 10 years.  K&G paid interest on the debt during 2006, 2007, 2008, and 2009. K&G claimed deductions for the interest expense on its tax returns for those years.[6]

In 2007 K&G also borrowed approximately $4,060,359 from its FCW line of credit for production expenditures related to the Wood Stone property.  K&G paid interest on this debt during 2007 and 2008.  K&G claimed deductions for this interest but now concedes that the interest is not deductible and must be capitalized.

---

[6]For 2008 K&G mistakenly deducted $129,268 of the principal payments as an interest expense.  K&G concedes that this amount is not deductible. Respondent concedes that the interest that K&G paid during 2009 is deductible because any preproductive period would have ended on December 31, 2008. Additionally, for 2009 K&G also deducted an interest expense of $57,877 that was due to an accrual to cash adjustment reversal.  K&G concedes that this is not a deductible expense.

**[*16]** V.     FPAAs

On January 9, 2012, respondent issued a total of seven FPAAs to the entities' TMPs.  Two FPAAs related to WRP I.  Two other FPAAs related to Rosedale Ranch.  The final three FPAAs related to K&G.

A.     FPAAs Relating to WRP I

The two FPAAs issued to the TMP of WRP I included one for 2008 and one for 2009.  The FPAA for 2008 disallowed most of the property tax expense deduction, disallowed most of the interest expense deduction, made a section 481 adjustment, and made computational adjustments.  The FPAA for 2009 disallowed most of the property tax expense deduction, disallowed most of the interest expense deduction, and made computational adjustments.

B.     FPAAs Relating to Rosedale Ranch

The two FPAAs issued to the TMP of Rosedale Ranch included one for 2008 and one for 2009.  The FPAA for 2008 disallowed most of the interest expense deduction, made a section 481 adjustment, and made computational adjustments.  The FPAA for 2009 disallowed most of the interest expense deduction and made computational adjustments.

[*17] C.     FPAAs Relating to K&G

The three FPAAs issued to the TMP of K&G included one for 2007, one for 2008, and one for 2009. The FPAA for 2007 disallowed a portion of the interest expense deduction, made a section 481 adjustment, and made computational adjustments. The FPAA for 2008 disallowed most of the interest expense deduction and made computational adjustments. The FPAA for 2009 disallowed a portion of the interest expense deduction, increased a depreciation amount allowed, reduced income for amounts attributable to portfolio income interest and investment income, and made computational adjustments.

OPINION

I.     Capitalization

We enter the vast and complex world of uniform capitalization, in a setting of various passthrough entities that purchased land on which they planted and grew almond trees as part of their businesses of farming almonds. The parties' dispute rests not on whether the property taxes and the interest are deductible. Their dispute focuses instead on when those costs may be deducted.

Respondent determined that the entities were not entitled to deduct currently any of the property taxes or interest in dispute. As to the taxes respondent argues, because WRP I used its land to grow its almond trees, WRP I must capitalize the

[*18] taxes related to the land rather than deduct those taxes currently. As to the interest, respondent argues, the fact that each entity used its land to grow its almond trees means that the land and the almond trees are sufficiently related to each other to be considered a single unit of property the basis of which includes the amount of the interest that the entity paid to finance its purchase of the land. Respondent adds that Rosedale Ranch and K&G also must capitalize the interest that they paid on the funds that they borrowed and then lent to WRP I because their loans to WRP I were related party transactions subject to the antiabuse rule in section 1.263A-15(c), Income Tax Regs.[7]

Petitioners argue that section 263A does not apply to either the property taxes or the interest. This is because, in petitioners' view, the taxes and the interest relate not to production of the almond trees but to the land, which the entities did not produce. Petitioners assert that the antiabuse rule is inapplicable because Rosedale Ranch and K&G lacked the requisite intent to trigger that rule.

---

[7]Respondent advances an alternative argument in support of his view that each entity must capitalize the interest that it paid. The alternative argument is that each entity is a producer of real property that failed to perform the avoided cost method calculation that sec. 1.263A-9(a), Income Tax Regs., required. Given our holdings in these cases, we need not and do not address this alternative argument.

**[*19]** Petitioners conclude that the entities may currently deduct both the property taxes and the interest in dispute.

### A. Expense Deduction Versus Capital Expenditure

Federal income tax law distinguishes between a payment that is currently deductible as an expense and a payment that is capitalized as a capital expenditure. Capital expenditures are not exhaustively enumerated in the Code. Deductions, on the other hand, are exceptions to the norm of capitalization and require a specific statutory provision. "In exploring the relationship between deductions and capital expenditures, * * * [the Supreme] Court has noted the 'familiar rule' that 'an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer.'" INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992) (quoting Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943)).

The distinction between a current expense and a capital expenditure is important in that it affects the timing of a taxpayer's cost recovery of the payment. "While business expenses are currently deductible, a capital expenditure usually is amortized and depreciated over the life of the relevant asset, or, where no specific asset or useful life can be ascertained, is deducted upon dissolution of the enterprise." Id. at 83-84; see also Smith v. Commissioner, 300 F.3d 1023, 1028-

**[\*20]** 1029 (9th Cir. 2002), aff'g Vanalco, Inc. v. Commissioner, T.C. Memo. 1999-265; Lychuk v. Commissioner, 116 T.C. 374, 410 (2001).

### B. Relevant Statutory Provisions for Capitalization

#### 1. Background

Congress promulgated section 263(a)(1) (and various other similar provisions requiring capitalization) "to match expenses with the revenues of the taxable period to which they are properly attributable, thereby resulting in a more accurate calculation of net income for tax purposes." INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; Hertz Corp. v. United States, 364 U.S. 122, 126 (1960); see also Commissioner v. Idaho Power Co., 418 U.S. 1, 10-11 (1974); Lychuk v. Commissioner, 116 T.C. at 410. A taxpayer's capitalization of a cost that produces revenue in future years most accurately depicts the taxpayer's true taxable income in the year of capitalization and in each ensuing year. See INDOPCO, Inc. v. Commissioner, 503 U.S. at 84. A taxpayer's reported income misrepresents its actual income to the extent that the reported income takes into account expenses that do not correlate to the revenue that they generate. See Lychuk v. Commissioner, 116 T.C. at 410; see also INDOPCO, Inc. v. Commissioner, 503 U.S. at 84. A major objective of efficient tax policy is to match in the same taxable period the deduction of expenses with the recognition of

[*21] any related revenue, and the inaccurate reporting of expenses thwarts that policy and results in a reduction in the tax revenue that is otherwise earned in, and more accurately attributable to, each taxable year.  See, e.g., INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; Lychuk v. Commissioner, 116 T.C. at 410.

The statutory provisions for capitalization that are relevant to our analysis are section 263(a)(1), former section 189, and section 263A.

2.    Section 263(a)(1)

Section 263(a)(1) requires taxpayers to capitalize "[a]ny amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property".  Section 263(a)(1) serves generally to distinguish capital expenditures from expense deductions, see INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; Commissioner v. Idaho Power Co., 418 U.S. at 16, and through its breadth, "prevents the distortion of income that would otherwise occur" from presently deducting an expense that does not correlate to the production of current income, Commissioner v. Idaho Power Co., 418 U.S. at 14; see also United States v. Hill, 506 U.S. 546, 556 (1993).  Although section 263(a)(1) was initially included in the Internal Revenue Code of 1954, Ch. 736, 68A Stat. at 77, some of its text dates back to almost a century before that to the Revenue Act of 1864, Ch. 173, sec. 117, 13 Stat. at 281.  See also Hill, 506 U.S. at 555 n.6 (noting that some

[*22] of the text in section 263(a)(1) has "one of the longest lineages of any provision in the Internal Revenue Code").

### 3. Former Section 189

Congress eventually supplemented section 263(a)(1) with former section 189.[8] Former section 189, which was added to the Code as part of the Tax Reform Act of 1976, Pub. L. No. 94-455, sec. 201(a), 90 Stat. at 1525, required taxpayers to capitalize real property construction period interest and taxes.

### 4. Section 263A

After the enactment of former section 189, and with a working knowledge gleaned from the postenactment operation of that former section in tandem with section 263(a)(1), the Department of the Treasury concluded that the capitalization rules lacked uniformity. See The Treasury Dep't Report to the President, Tax Reform for Fairness, Simplicity, and Economic Growth 125-128 (1984). The Department of the Treasury also noted the mismatch between the reporting of income and the expenses relating to that income, in that some taxpayers were deducting expenses before the realization of income because they were not required to uniformly capitalize all indirect production costs. Id. at 126-128.

---

[8]Former sec. 189 was repealed by the Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 803(b)(1), 100 Stat. at 2355.

**[\*23]** Section 263A was included in the Tax Reform Act of 1986 (TRA 86), Pub. L. No. 99-514, sec. 803, 100 Stat. at 2350, to address, among other things, the expressed concerns of mismatching and lack of uniformity.  See, e.g., S. Rept. No. 99-313, at 140 (1986), 1986-3 C.B. (Vol. 3) 1, 140.  Section 263A generally requires taxpayers who produce real property to capitalize "(A) the direct costs of such property, and (B) such property's proper share of those indirect costs (including taxes) part or all of which are allocable to such property."  Sec. 263A(a) and (b)(1).  For purposes of this provision, "capitalize" means, in the case of property that is not inventory in the hands of the taxpayer, that the costs are charged to a capital account or to the basis of the property.  See sec. 1.263A-1(c)(3), Income Tax Regs.  Taxpayers can eventually recover the capitalized costs through "depreciation, amortization, cost of goods sold, or by an adjustment to basis at the time the property is used, sold, placed in service, or otherwise disposed of by the taxpayer."  TRA 86 sec. 803(b)(1), 100 Stat. at 2355; sec. 1.263A-1(c)(4), Income Tax Regs.

Congress repealed former section 189 contemporaneously with the enactment of section 263A.

[*24] C.    Relevant Regulatory Provisions

Congress instructed the Secretary to prescribe regulations to carry out the purposes of section 263A.  Sec. 263A(i).  Section 1.263A-0, Income Tax Regs., sets forth an outline of the regulations under section 263A.  Sections 1.263A-1 through 1.263A-6, Income Tax Regs., provide rules as to the capitalization under section 263A of costs other than interest.  Section 1.263A-7, Income Tax Regs., sets forth rules for changing a method of accounting to comply with section 263A.  The Secretary set forth these rules as "guidance to taxpayers changing their methods of accounting for costs subject to section 263A."  See sec. 1.263A-7(a)(1), Income Tax Regs.  Sections 1.263A-8 through 1.263A-15, Income Tax Regs., set forth rules that generally apply to the capitalization of interest under section 263A.

D.    Applicability of Section 263A to the Taxes and Interest in Dispute

The taxes and interest in dispute generally relate to the land on which the entities planted and grew their almond trees.  Accordingly, the entities must capitalize the property taxes and the interest to the extent stated herein.

1.    Relevant Production Is That of the Almond Trees

Petitioners argue that section 263A does not apply in these cases because the interest and the property taxes relate to the land, which the entities did not

[*25] produce.  We disagree with the proposition that the applicability of section 263A turns on whether the entities produced the land itself.

The entities' growing of the almond trees is a production of those trees within the reach of section 263A.  The uniform capitalization rules apply to "[r]eal * * * property produced by the taxpayer" for the taxpayer's use in a trade or business or in an activity conducted for profit.  Sec. 263A(b)(1), (c)(1).  While the statute does not define the term "real property" for purposes of section 263A, section 1.263A-8(c)(1) and (2), Income Tax Regs., defines the term to include "land" and "unsevered natural products of land" and states further that "unsevered natural products of land" generally include "[g]rowing crops and plants" where the preproductive period of the crop or plant exceeds two years.  That definition, although included in the regulations explicitly made applicable to the capitalization of interest but not included in the regulations explicitly made applicable to the capitalization of other costs, is consistent with the term's "ordinary meaning."  See Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 833 (9th Cir. 1996) (observing that a statutory term that the statute does not define may be construed in accordance with its "ordinary meaning").  The ordinary meaning of the term "real property" includes "property consisting of land, buildings, crops, or other resources still attached to or within the land".  Merriam-Webster's Online

[*26] Dictionary, http://www.merriam-webster.com/dictionary/property (last visited Nov. 15, 2016); see also Black's Law Dictionary 1412 (10th ed. 2014) (defining the term "real property" to include "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land"). In that the almond trees grow on the land and otherwise fit within the ordinary meaning of the term "real property", we conclude that the almond trees are "real property" for all purposes of section 263A.[9]

As to the reach of the word "produced", while section 263A(g)(1) generally defines the word "produce" to include "construct, build, install, manufacture, develop, or improve", the regulations thereunder interpret the word "produce" also to include, inter alia, "raise" or "grow". Sec. 1.263A-2(a)(1)(i), Income Tax Regs.; see also id. sec. 1.263A-4(a)(1) (stating that a taxpayer engaged in raising or growing any agricultural or horticultural commodity is engaged in the

---

[9]Growing crops and plants are real property only if the preproductive period of the crop or plant exceeds two years. See sec. 1.263A-8(c)(2), Income Tax Regs.; see also sec. 263A(e)(3)(B) (mandating that the preproductive period for a plant grown in commercial quantities in the United States rests on the nationwide weighted average preproductive period for the plant). The Secretary determined on the basis of information provided by the U.S. Department of Agriculture that almond trees have a nationwide weighted average preproductive period exceeding two years. Notice 2000-45, 2000-2 C.B. 256. And neither party disputes that almond trees have a preproductive period exceeding two years. Also, pistachio trees are treated the same as almond trees; they have a preproductive period that exceeds two years. Id.

[*27] production of property). This regulatory interpretation of the word "produce" to include these activities is consistent with the statute, which presupposes that section 263A applies to farming businesses. See generally sec. 263A(d). And section 263A(e)(4)(A) and (B) defines "farming business" to include a trade or business of "the raising or harvesting of trees bearing fruit, nuts, or other crops". Accordingly, because the entities are producing real property, that is, growing almond trees, they must capitalize their direct and indirect costs.

Petitioners focus on the fact that the taxes and the interest directly relate to the ownership and the purchase of the land, respectively, to conclude that these expenses may be capitalized only if the land is being produced. Petitioners' focus is blurred. The entities grow almond trees as part of their businesses, and the almond trees grow on the land. The land itself need not be produced in that the land and the almond trees are sufficiently intertwined in the sense that the almond trees cannot grow without the underlying land and the entities' placing in service of the almond trees requires that the entities also place in service the underlying land. Thus, while the property taxes and the interest may have been more closely connected with the land than with the almond trees, the payment of those costs, to be sure, was both necessary and indispensable to the growing of the almond trees so as to be considered a cost of producing those trees. Our finding that the land is

[*28] a necessary and indispensable part of the growing of the almond trees is further demonstrated by WRP I's phase 1 land preparation costs. That phase, in part, included analyzing the soil, ripping and deep ripping the soil, trenching, and leveling the land.

We also are mindful of section 1.263A-10, Income Tax Regs. That section sets forth rules defining the "unit of property * * * used as the basis to determine accumulated production expenditures under § 1.263A-11 and the beginning and end of the production period under § 1.263A-12." See sec. 1.263A-10(a)(1), Income Tax Regs.; see also id. sec. 1.263A-11(a) (stating that accumulated production expenditures are "the cumulative amount of direct and indirect costs described in section 263A(a) that are required to be capitalized with respect to the unit of property * * *, including interest capitalized in prior computation periods, plus the adjusted bases of any assets * * * that are used to produce the unit of property during the period of their use"). Our finding of the sufficient nexus between the land and the almond trees is consistent with those rules. Section 1.263A-10(b)(1), Income Tax Regs., provides that "[a] unit of real property includes any components of real property owned by the taxpayer * * * that are functionally interdependent" and that "[t]he portion of land included in a unit of real property includes land on which real property (including a common feature)

[*29] included in the unit is situated * * * and any other contiguous portion of the tract of land other than land that the taxpayer holds for a purpose unrelated to the unit being produced". See also sec. 1.263A-10(b)(2), Income Tax Regs. (stating that components of real property "are functionally interdependent if the placing in service of one component is dependent on the placing in service of the other component" and that "the real property components of a single-family house (e.g., the land, foundation, and walls) are functionally interdependent)". Petitioners also are mindful of these provisions. They attempt to fit within them by contending that the land and the almond trees must be mutually dependent to fall within the reach of that text. The fact that the land can be placed in service without the almond trees, petitioners argue, means that the land and the almond trees are not mutually interdependent, and thus, that they are not a unit of property within the context of section 1.263A-10, Income Tax Regs.[10]

The regulations do not require mutual interdependence. With regard to buildings, the regulations contemplate that a building and its land are components of the same unit of property. See id. para. (b)(1) and (2); see also id. subpara. (6),

_____

[10]Petitioners also argue that sec. 1.263A-10, Income Tax Regs., is invalid to the extent that it requires capitalization of interest related to property that is not being produced. We disagree. But the regulations are consistent with the legislators' intent that expenses be matched with the revenue that they generate and that the entities' land was necessary to grow the almond trees.

**[\*30]** <u>Examples</u> (<u>1</u>) through (<u>7</u>).  Likewise as to the land and the almond trees.  For the land and the almond trees to be characterized as a unit of property, the regulations require that the almond trees are growing on the land and that the placing in service of either the land or the almond trees is dependent on the other piece of property's also being in service.  Such is the case here.

### 2.    Direct and Indirect Costs

Section 263A does not define "direct costs" or "indirect costs".  Pursuant to his regulatory authority, the Secretary has prescribed rules in section 1.263A-1(e), Income Tax Regs., that clarify the meanings of those terms.

As to the property taxes in dispute, we do not read the regulations on "direct costs" to include those taxes.  For direct costs, section 1.263A-1(e)(2)(i), Income Tax Regs., distinguishes between producers and resellers and provides that "[p]roducers must capitalize direct material costs and direct labor costs."  Section 1.263A-1(e)(2)(i), Income Tax Regs., further describes in the case of producers the costs that are included within the breadth of the terms "direct labor costs" and "direct material costs".  "Direct costs" includes only "direct labor costs" and "direct material costs".  <u>Accord</u> <u>id.</u> subpara. (3)(i)(A), Income Tax Regs. (stating that costs other than direct material costs and direct labor costs are characterized as "indirect costs"); <u>see</u> <u>Helvering v. Morgan's, Inc.</u>, 293 U.S. 121, 125 n.1

**[*31]** (1934); see also Waltner v. Commissioner, T.C. Memo. 2014-35, at *50-*51 (noting that a congressionally prescribed specific list of terms is presumed to be exhaustive), aff'd, ___ F. App'x ___, 2016 WL 5800492 (9th Cir. Oct. 5, 2016). Neither party asserts that the property taxes are either a direct labor cost or a direct material cost. We confine ourselves to determining whether the property taxes are an indirect cost.

Section 1.263A-1(e)(3)(i)(A), Income Tax Regs., defines the term "indirect costs" to mean in the case of producers "all costs other than direct material costs and direct labor costs". Those regulations further require that taxpayers capitalize all indirect costs "properly allocable to property produced", a standard that is met "when the costs directly benefit or are incurred by reason of the performance of production". Id. A cost meets this standard when the underlying expense is a but-for cause of the taxpayer's production activities. See City Line Candy & Tobacco Corp. v. Commissioner, 141 T.C. 414, 431-433 (2013) (requiring that the taxpayer capitalize the cost of cigarette tax stamps as an indirect cost of inventory because "[i]f * * * [the taxpayer] did not purchase the cigarette tax stamps and affix them to the cigarette packages, it could not offer the cigarettes for sale"), aff'd, 624 F. App'x 784 (2d Cir. 2015); see also Robinson Knife Mfg. Co. v. Commissioner, 600 F.3d 121, 129 (2d Cir. 2010) (not requiring the taxpayer to capitalize the cost

**[*32]** of royalty payments on using a trademark as an indirect cost because the taxpayer could have produced the property sold without a trademark and avoided paying the royalty cost), rev'g T.C. Memo. 2009-9.

Section 1.263A-1(e)(3)(ii), Income Tax Regs., goes on to list examples to illustrate the types of indirect costs that are required to be capitalized. One example is "[t]axes", which the regulations explain "include those taxes * * * that are otherwise allowable as a deduction to the extent such taxes are attributable to labor, materials, supplies, equipment, land, or facilities used in production". Id. subdiv. (ii)(L). This provision is consistent with a primary purpose of section 263A to more accurately reflect income through a calculation of income that takes into account related expenses. See, e.g., Suzy's Zoo v. Commissioner, 273 F.3d 875, 879 (9th Cir. 2001), aff'g 114 T.C. 1 (2000). Although WRP I deducted its property taxes, those taxes directly benefit the growing of the almond trees and are allocable to the produced property (the almond trees) that will produce income in the future. Allowing a current deduction of the property taxes would distort WRP I's actual income for the subject years and would otherwise allow WRP I to offset its unrelated income. This is precisely the mismatch of expenses and revenues that section 263A was enacted to prevent.

[*33] Petitioners argue further that the property taxes neither directly benefited WRP I's almond trees nor were incurred as to those trees in that the taxes relate directly to the Wasco land, which WRP I did not produce. Petitioners add that the property taxes would be due regardless of whether the entities were growing almond trees. We are unpersuaded by petitioners' argument. The Wasco land was used to grow the almond trees, and the property taxes assessed as to that land directly benefit the almond trees in that the taxes were incurred in the course of WRP I's using the land to grow the almond trees. WRP I is obligated to pay the property taxes on its portion of the Wasco land, given that WRP I is the owner of that land for which the tax is assessed. In addition, WRP I could have been precluded from growing the almond trees on the land if the property taxes were not paid. We also bear in mind that the Court has previously required real estate developers to capitalize property taxes as indirect costs properly allocable to their properties. See Von-Lusk v. Commissioner, 104 T.C. 207, 209, 217 (1995) (requiring that a partnership capitalize property taxes where the partnership was organized to manage, hold, and develop property for investment); see also Reichel v. Commissioner, 112 T.C. 14, 19-20 (1999) (requiring that a real estate developer capitalize property taxes on property that was not developed).

**[*34]** We conclude that WRP I must capitalize the property taxes that it paid as to its Wasco land to the extent that the taxes relate to the portion of the land on which WRP I grew its almond trees. To the extent that the property taxes did not relate to the portion of the land on which WRP I grew its almond trees, those taxes are not allocable to the land (and thus are not allocable to the almond trees) for purposes of section 263A(b)(1). Section 263A, therefore, does not require that WRP I capitalize that latter portion of the taxes.

### 3. Interest Expenses

While section 263A(a) is the general rule for capitalizing costs, section 263A(f) is a special rule that applies specifically to the capitalization of interest under section 263A. Section 263A(f)(1) provides in relevant part that interest is capitalized where (1) the interest is paid during the production period and (2) the interest is allocable to real property that the taxpayer produced and that has a long useful life, an estimated production period exceeding two years, or an estimated production period exceeding one year and a cost exceeding $1 million. The corresponding regulations provide that "[c]apitalization of interest under the avoided cost method described in §1.263A-9 is required with respect to the production of designated property described in paragraph (b) of this section." Sec. 1.263A-8(a)(1), Income Tax Regs.; see also id. sec. 1.263A-9(a)(1) (requiring that

[*35] the avoided cost method generally be used to calculate the amount of

interest capitalized under section 263A(f)).[11]  The regulations further provide that

"designated property" generally includes any real property that is produced.  See

sec. 1.263A-8(b)(1)(i), Income Tax Regs.

### a.  Productive Period

We have held that the almond trees are real property that the entities

produced and that the preproductive period of the almond trees exceeds two years.

For the reasons that we have previously discussed, this holding applies equally to

the interest costs and to the other costs (here, the property taxes).  Given our

holding, we conclude that the almond trees also are "designated property" within

the context of section 1.263A-8(b), Income Tax Regs.; i.e., the almond trees are

real property that is produced.  We further conclude that section 263A(a) and

(f)(1) requires that the entities capitalize the interest that they paid during the

production period of their almond trees to the extent that the interest is allocable to

those trees.  We further conclude that the entities must use the avoided cost

method of section 1.263A-9, Income Tax Regs., to determine the interest that is

_____

[11]Generally stated, the avoided cost method requires that interest be
capitalized to the extent that the interest would theoretically have been avoided if
accumulated production expenditures had been used to repay or reduce the
taxpayer's outstanding debt.  See sec. 1.263A-9(a)(1), Income Tax Regs.

[*36] allocable to the almond trees and that each grove of almond trees and its corresponding land is characterized as a single unit of property.

### i. Length of Production Period

The "production period" is the period "beginning on the date on which production of the property begins" and "ending on the date on which the property is ready to be placed in service or is ready to be held for sale."  Sec. 263A(f)(4)(B).  The production period for real property begins when any physical production activity is performed with respect to a unit of real property.  See sec. 1.263A-12(c)(2), Income Tax Regs.  Physical production activities as to real property include "[c]learing, grading, or excavating of raw land".  See id. para. (e)(2)(i).

### ii. Application

WRP I began physical production activities for its almond trees in 2007 when it started the first of its three phases of growing the trees.  Specifically, in that phase, WRP I began ripping and deep ripping the soil, trenching, leveling the land, and planting almond trees.  See sec. 1.263A-12(c)(2), (e)(2)(i), Income Tax Regs.; see also id. sec. 1.263A-10(b)(1) (stating that the start of the production period for a functionally interdependent component of a unit of real property starts the production period for the entire unit of property).  K&G began physical

[*37] production activities for its almond trees in 2005 when it planted those trees. Rosedale Ranch began physical production activities for its almond trees in 2006 when it planted those trees.

Each entity continued using its land to grow almond trees throughout the subject years, and the record contains no evidence from which we find that the production period for any of the entities ended before the close of the subject years. See generally sec. 1.263A-12(d), Income Tax Regs. (providing rules to determine when a production period ends). We conclude that WRP I, Rosedale Ranch, and K&G began their production periods in 2007, 2006, and 2005, respectively.

b.     Allocation Rules

Section 263A(f)(2)(A) sets forth the general rules for allocating interest to property that is subject to the interest capitalization rules of section 263A. First, a taxpayer must capitalize and assign to the property the "interest on any indebtedness directly attributable to production expenditures with respect to such property". See sec. 263A(f)(2)(A)(i); see also sec. 1.263A-9(a)(2)(i)(A), (b), Income Tax Regs. (requiring capitalization of interest incurred on "traced debt", defined as the outstanding eligible debt that is allocated to accumulated production expenditures with respect to the unit of property on the measurement date). The

**[*38]** entities, therefore, must capitalize the interest on debt directly attributable to production expenditures with respect to the almond trees.

Second, a taxpayer must capitalize and assign to the property the "interest on any other indebtedness * * * to the extent that the taxpayer's interest costs could have been reduced if production expenditures (not attributable to indebtedness described in clause (i)) had not been incurred." See sec. 263A(f)(2)(A)(ii); see also sec. 1.263A-9(a)(2)(i)(B), (c), Income Tax Regs. (requiring capitalization of interest incurred on "excess expenditure amount", defined as accumulated production expenditures in excess of traced debt with respect to a unit of designated property). The entities, therefore, also must capitalize interest on the amount of their unrelated debt equal to the amount of production expenditures that would have been available to pay down their general debt.

### i. Production Expenditures

Section 263A(f)(2)(A) mandates that interest be capitalized if it is paid on debt directly attributable to production expenditures with respect to the produced property. That section does not require that the debt be directly attributable to the produced property. The term "production expenditures" denotes "the costs (whether or not incurred during the production period) required to be capitalized

[*39] under * * * [section 263A(a)] with respect to the property." Sec. 263A(f)(4)(C). Section 263A(a)(2) requires that the taxpayer capitalize the direct costs of the produced property and the property's proper share of the indirect costs that are allocable to the property. See also sec. 263A(b)(1).

The land does not have to be the property that is being produced to bring interest on a financing of the land within the reach of section 263A. Rather, pursuant to the command of section 263A(f)(2)(A)(i), the interest that the entities paid on their financing of their land must be capitalized as a cost of their almond trees if the cost of the land is a production expenditure with respect to the almond trees. Our reliance on the use of the term "production expenditures" in section 263A(f)(2)(A)(i) to reach this conclusion does not mean that the term "directly attributable" is of no consequence. The latter term comes into play after the production expenditures have been identified to set the relevant debt as the debt that is directly attributable to the production expenditures.

Section 1.263A-1(a)(1), Income Tax Regs., provides that the general rules set forth in sections 1.263A-1 through 1.263A-6, Income Tax Regs., do not apply to the capitalization of interest. However, the regulations that apply to interest capitalization refer us back to section 263A(a) to determine the direct and indirect costs that are required to be capitalized. Sec. 1.263A-11(a), Income Tax Regs.

**[*40]** Accordingly, we return to the capitalization regulations under the general rules to determine whether the cost of the land is a production expenditure.

The entities' land is not a direct cost of their growing of the almond trees under the general rules for capitalization. See id. sec. 1.263A-1(e)(2)(i), (3)(ii)(L) (providing in the case of producers such as the entities that direct costs are direct material costs and direct labor costs and, in the setting of indirect costs, distinguishing between "materials" and "land", which leads us to conclude that "land" is not a "material" in the context of section 1.263A-1(e), Income Tax Regs.). But the cost of land can be an indirect cost of growing the almond trees if the land directly benefits, or the cost is incurred by reason of the growing, the trees. See id. subpara. (3)(i)(A). The land allows the entities to grow the almond trees and, as we have discussed, is necessary and indeed indispensable to that process. We conclude that the land directly benefits the entities' growing of their almond trees and that the cost of the land therefore is an indirect cost of that process to the extent that the land is used to grow the trees. We hold that each entity's land cost is a production expenditure with respect to its growing of its almond trees and, accordingly, that section 263A requires that the interest paid on the financing of that portion of the land be capitalized as "interest on any indebtedness directly attributable to production expenditures with respect to such

[*41] property" (i.e., the almond trees, the produced/designated property).  See sec. 263A(f)(2)(A)(i).  The capitalized interest is treated as a cost of (and added to the basis of) the almond trees (the designated property) and not of the land (the asset used to produce the designated property) to which the interest more directly relates.  See sec. 1.263A-8(a)(2), Income Tax Regs.

### ii.  Proper Portion of Land

#### a.  Rosedale Ranch and K&G

Rosedale Ranch grew only almond trees on its land, and K&G grew only almond trees and pistachio trees on its land.  All of the interest that they paid as to their financing of that land, therefore, is attributable to their growing of their almond trees and pistachio trees.  We sustain respondent's determination that Rosedale Ranch and K&G must capitalize all of the interest that they paid on their financing of the purchases of their land.

#### b.  WRP I

Each party likewise urges us to take an all-or-nothing approach as to WRP I's payment of interest.  Respondent asks us to find that WRP I must capitalize the interest paid on the entire portion of its Wasco property (including the land that was used to grow row crops) because, he states, the entire land is considered part of a unit of property.  Petitioners argue that the land cannot be

[*42] viewed as a single unit because planting one tree should not necessarily require the entire portion of interest on the land to be capitalized. Petitioners conclude that WRP I is not required to capitalize any of the interest that it paid. We conclude that WRP I must capitalize some, but not all, of the interest that it paid.

Section 1.263A-10(b)(1), Income Tax Regs., sets forth general rules for determining each unit of real property and provides that "[t]he portion of land included in a unit of real property includes land on which real property (including a common feature) included in the unit is situated * * * and any other contiguous portion of the tract of land other than land that the taxpayer holds for a purpose unrelated to the unit being produced". The regulations do not explain whether the text "holds for a purpose unrelated to the unit being produced" is applied on the basis of the current use of the property or of the intended use of the property. This distinction is important here, where we find that in 2008 and 2009 WRP I used some of its Wasco land for row crops but intended eventually to use all of that land to grow almond trees.

The history of section 263A and former section 189 demonstrates that taxpayers must capitalize the cost of contiguous portions of land on the basis of their current use. Allowing a taxpayer to deduct interest on land to the extent that

**[\*43]** the land is currently producing income does not create the matching problems that section 263A and former section 189 were intended to prevent. Specifically, deducting the interest on the portion of land that is producing current income does not allow taxpayers to use that interest to offset income from an unrelated source. Instead, it allows taxpayers to accurately reflect their current income by deducting their expenses attributable to that income.

Given that WRP I used a portion of its land for row crops during 2008 and 2009, the cost of the portion of land growing row crops is not a cost of growing almond trees. Accordingly, the interest that WRP I paid as to its part of financing of the purchase of that portion of the Wasco land is not required to be capitalized. The remainder of the interest paid for 2008 and 2009, attributable to the purchase of land on which almond trees were growing, must be capitalized as "interest on any indebtedness directly attributable to production expenditures with respect to such property". See sec. 263A(f)(2)(A)(i).

c.    Interest Costs That Could Have Been Reduced

Section 263A(f)(2)(A)(ii) requires taxpayers to capitalize their "interest on any other indebtedness * * * to the extent that the taxpayer's interest costs could have been reduced if production expenditures * * * had not been incurred." Petitioners argue that the entities' treatment of the interest on their tax returns is

[*44] acceptable for Federal income tax purposes because that treatment is consistent with the relevant standards of financial accounting. But the mere fact that a taxpayer's manner of accounting complies with the standards of financial accounting does not necessarily mean that it is appropriate for Federal income tax purposes. See Thor Power Tool Co. v. United States, 439 U.S. 522, 541-544 (1979); Am. Auto. Ass'n v. United States, 367 U.S. 687, 690-693 (1961). Moreover, the governing regulations are explicit that a taxpayer's compliance with financial accounting standards carries no weight: "The avoided cost method is applied under this section without regard to any financial or regulatory accounting principles for the capitalization of interest." Sec. 1.263A-9(g)(4), Income Tax Regs.

WRP I's debt exceeded its production expenditures for 2008 and 2009. Section 263A(f)(2)(A)(ii) therefore does not require for those years that WRP I capitalize any portion of the interest attributable to the portion of the Wasco land used for the growing of row crops. See sec. 1.263A-9(c)(1), Income Tax Regs.[12]

---

[12]Respondent argues that sec. 263A(f)(2)(A)(ii) requires that WRP I capitalize additional interest for 2007 because its preproductive expenditures exceeded its debt during that year. See sec. 1.263A-11(b), Income Tax Regs. (stating that a taxpayer's costs that are incurred and capitalized with respect to a unit of property before the beginning of the production period are taken into account as accumulated production expenditures when the production period of

(continued...)

**[\*45]** E.    <u>Antiabuse Rule</u>

Section 263A(i)(1) explicitly directs the Secretary to issue regulations to prevent the use of related parties to avoid the application of section 263A. The Secretary prescribed an antiabuse rule in section 1.263A-15(c), Income Tax Regs., pursuant to this authority. That section provides:

> The interest capitalization rules contained in §§ 1.263A-8 through 1.263A-15 must be applied by the taxpayer in a manner that is consistent with and reasonably carries out the purposes of section 263A(f). * * * For purposes of this paragraph (c), the presence of back-to-back loans with different rates of interest, and other uses of related parties to facilitate an avoidance of interest capitalization, evidences abuse. In such cases, the District Director may, based upon all the facts and circumstances, determine the amount of interest that must be capitalized in a manner that is consistent with and reasonably carries out the purposes of section 263A(f).

Respondent determined that the antiabuse rule requires that Rosedale Ranch and K&G capitalize the interest they paid to FCW on their borrowings from FCW, which Rosedale Ranch and K&G contemporaneously lent to WRP I to purchase the Wasco property. According to respondent, the antiabuse rule applies because WRP I avoided capitalizing additional interest costs by borrowing from its related parties who did not require current interest payments.

---

[12](...continued)
the property begins). We disagree. For 2007 WRP I did not deduct any interest on loans for the purchase of the Wasco land. Thus, no interest for that year could be avoided.

**[*46]** Petitioners argue that Rosedale Ranch and K&G are not required to capitalize additional interest under the antiabuse rule because they lacked the requisite intent to abuse the interest capitalization rules.  As petitioners see it, Notice 88-99, 1988-2 C.B. 422, 428, 431, requires a finding of a "purposeful avoidance" on the parts of Rosedale Ranch and K&G for the antiabuse rule to apply in the manner that respondent asserts.

Petitioners' reliance on Notice 88-99, supra, to support their position is misplaced.  That notice was issued "to provide guidance to taxpayers concerning forthcoming regulations interpreting the interest capitalization requirements contained in the uniform capitalization rules".  Id., 1988-2 C.B. at 422.  The notice states that the "related party avoided cost rules * * * also apply in any other case in which the producing taxpayer * * * and any person (or persons) engage in any transaction * * * with a principal purpose of avoiding the interest capitalization requirements of section 263A(f)" and lists several considerations to determine whether the transaction has a principal purpose of avoiding capitalizing interest. Id., 1988-2 C.B. at 428; see also id. at 431 (similar wording).

But section 1.263A-15(c), Income Tax Regs., did not adopt a requirement of purposeful avoidance or otherwise suggest that the Secretary was retaining such an avoidance requirement.  The Secretary's omission of any reference in the

**[\*47]** applicable regulations to a purposeful avoidance requirement means that the Secretary opted not to incorporate that requirement into those regulations. See Krukowski v. Commissioner, 114 T.C. 366, 374 (2000) (and cases cited thereat), aff'd, 279 F.3d 547 (7th Cir. 2002). We therefore will not address the considerations listed in the notice but instead focus on whether the loans between WRP I and the other two entities require capitalizing the interest that Rosedale Ranch and K&G paid to FCW to "reasonably carr[y] out the purposes of section 263A(f)." See sec. 1.263A-15(c), Income Tax Regs.

The entities are related parties in that Keith and Jennifer Gardiner own directly or indirectly 50% or more of each entity. See id. sec. 1.263A-8(a)(4)(i) ("Except as otherwise provided, for purposes of §§ 1.263A-8 through 1.263A-15, a person is related to a taxpayer if their relationship is described in section 267(b) or 707(b)."); see also secs. 267(b), 707(b). In addition, if WRP I had financed its purchase of the Wasco property entirely with loans from unrelated parties, WRP I would most likely have been required to make interest payments and would have had to capitalize the portions of those payments that were allocable to the portion of that land on which it was growing almond trees. WRP I, however, obtained loans from Rosedale Ranch and from K&G, and Rosedale Ranch and K&G deferred all interest payments until the Wasco property was generating income

[*48] from the almond trees. Although WRP I would have been required to capitalize most of the interest payments, Rosedale Ranch and K&G deducted their interest costs in full. This is precisely the situation that the antiabuse rule contemplates. Accordingly, Rosedale Ranch and K&G must capitalize the interest they paid to FCW on the funds they borrowed from FCW and lent to WRP I to purchase the Wasco property to the extent that the interest is allocable to the portion of the Wasco land on which WRP I was growing its almond trees.

II.     Section 481 Adjustment

Section 481(a) requires that taxpayers who change a method of accounting adjust their income to prevent tax items from being duplicated or omitted. A change in the method of accounting includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in that overall plan. See sec. 1.481-1(a)(1), Income Tax Regs.; see also id. sec. 1.446-1(e)(2)(ii)(a). An item is material if it involves the appropriate time for inclusion of the item in income or the taking of a deduction. See Primo Pants Co. v. Commissioner, 78 T.C. 705, 720-722 (1982); sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.

The primary distinction between classifying a payment as a deductible expense or as a capital expenditure concerns the timing of the taxpayer's cost

[*49] recovery.  INDOPCO, Inc. v. Commissioner, 503 U.S. at 83-84.  Thus, our decision requiring the entities to capitalize rather than deduct their interest payments, and in the case of WRP I its payment of the property taxes, involves material items.  See Pelaez & Sons, Inc. v. Commissioner, 114 T.C. 473, 489 (2000), aff'd without published opinion, 253 F.3d 711 (11th Cir. 2001).  At trial petitioners' counsel agreed with this proposition, acknowledging that adjustments under section 481 are required in these cases if the Court sustains respondent's adjustments as to the property taxes and the interest.  Petitioners, however, took a more nuanced position on brief.  Petitioners now argue that the duty of consistency precludes respondent from applying section 481, notwithstanding whether the section would otherwise apply.  We disagree.

The duty of consistency is well established in the Ninth Circuit, the circuit in which these cases are appealable (absent the parties' stipulation to the contrary). Janis v. Commissioner, 461 F.3d 1080, 1084-1085 (9th Cir. 2006), aff'g T.C. Memo. 2004-117.  It prevents a taxpayer from taking a position for one year and then changing that position for a later year when an adjustment is barred by the statute of limitations.  See id. at 1085-1087; Estate of Ashman v. Commissioner, 231 F.3d 541, 544 (9th Cir. 2000), aff'g T.C. Memo. 1998-145.  Petitioners assert that the Court's sustaining respondent's adjustments under section 481 would give

[*50] the entities a double benefit; i.e., amortization of the capitalized interest and the capitalized property taxes and the deduction of the same interest and taxes for prior years that are now barred by the statute of limitations. Petitioners conclude that because the entities are precluded from taking the double benefit on account of the duty of consistency, the plain language of section 481(a) is inapplicable to them because it seeks to prevent a double benefit.

As we understand petitioners' argument, they contend that the duty of consistency trumps the applicability of the statute. They are mistaken. Congress has mandated through its enactment of section 481 that an adjustment under section 481 generally must be made to remove the threat of a double benefit or omission whenever there is a change in a method of accounting. See Suzy's Zoo v. Commissioner, 114 T.C. at 12-13. We decline to let the judicially established doctrine of a duty of consistency defeat that legislative act. Given that an adjustment to comply with section 263A is a change of a method of accounting, see sec. 1.263A-7, Income Tax Regs.; see also Suzy's Zoo v. Commissioner, 273 F.3d at 883-884; Pelaez & Sons, Inc. v. Commissioner, 114 T.C. at 486-489, a section 481 adjustment is required by the statute to eliminate any duplications or omissions caused by the method change, see also Primo Pants Co. v.

**[*51]** <u>Commissioner</u>, 78 T.C. at 720-721 (holding that a change in method of accounting requires an application of section 481).

Respondent's section 481 adjustment is correct as to Rosedale Ranch and K&G, given that those entities must capitalize their interest costs onto the almond trees. Respondent's section 481 adjustment is likewise correct as to WRP I to the extent that it reflects our holding that WRP I is required to capitalize the proper share of property taxes and interest.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.